WILLIAMS v. BENET.[1]

1. CASE CRITICISED.—Sullivan v. Speights, 14 S. C., 358, approved.
2. SUPREME COURT—QUORUM.—The constitution provides:
   "The Supreme Court shall consist of a Chief Justice and two Associate

---

[1] This case was heard and decided by Chief Justice McIver, Associate Justice Pope, and acting Associate Justice Wallace, who sat in the place of

Justices, any two of whom shall constitute a quorum. They shall be elected by a joint vote of the general assembly for the term of six years and shall continue in office until their successors shall be elected and qualified. They shall be so classified that one of the Justices shall go out of office every two years." (Art. IV., sec. 2.)

*Held*, that any two of the three Justices of the Supreme Court constitute a valid court; and therefore a Supreme Court held by the two Associate Justices, no Chief Justice being in commission, was a constitutional court and its judgments are binding.

3. Ibid.—Ibid.—It is not required that the three members of this court shall all be living to enable two of them to constitute a quorum; and therefore in this case, the office of Chief Justice having become vacant by death, the two surviving Associate Justices constituted a constitutional Supreme Court.

4. Ibid.—Ibid.—There is no difference in this matter between a vacancy caused by resignation and a vacancy caused by death. In both cases the vacancy exists, for the constitutional provision that these Justices "shall continue in office until their successors shall be elected and qualified," is permissive only and was not intended to prevent a Justice of the Supreme Court from surrendering his office.

5. Ibid.—Ibid.—The provision in section 6 of article IV., that no judge shall preside in certain cases, and providing for the appointment of some one to take his place, and the provision of section 11 as to filling vacancies, do not affect this question.

6. Ibid.—Acting Justice.—A person learned in the law, when sitting in the Supreme Court by appointment of the governor, in place of a Justice disqualified, is *pro hac vice* an Associate Justice of the Supreme Court, with all the powers appertaining to that office. Hence a Supreme Court consisting of one of its Associate Justices and such a substituted Justice is a constitutional court for the trial of a pending case, no Chief Justice being present or in commission.

This was a motion submitted to this court for a rehearing of the case decided and reported in 34 S. C., at page 112. The opinion states the case.

*Messrs. W. C. Benet, Parker & McGowan,* and *S. C. Cason,* for the motion.

*Messrs. Graydon & Graydon* and *H. J. Haynsworth,* contra.

Mr. Justice McGowan, disqualified by relationship to defendant. And all subsequent cases in this volume, reported in full, were heard and decided by a full court unless otherwise stated.—Reporter.

On December 23, 1891, the following order was signed:

The appellant herein having moved to set aside the judgment of this court herein and for a rehearing, and for this purpose having procured a stay of *remittitur*; after argument of counsel it is

Ordered, that the motion to set aside the judgment and for a rehearing be and the same is hereby refused. It is further ordered, that the *remittitur* be forthwith transmitted to the court below.                        HENRY McIVER, C. J.


Thereafter, on January 12, 1892, the following opinion, concurred in by Justices Pope and Wallace, was filed by

MR. CHIEF JUSTICE McIVER. This is a motion to set aside the judgment heretofore rendered in this case, upon the ground that the court, as organized at the time of the hearing, as well as at the time of the rendition of said judgment, was not a constitutional tribunal invested with power to hear and determine said cause. The facts out of which this contention arises are undisputed, and are as follows: The late Chief Justice Simpson having died on the 26th day of December, 1890, and the vacancy in that office thereby occasioned not having been filled, the Supreme Court was left with only two members, the two surviving Associate Justices, and one of them being disqualified from hearing this case by relationship to one of the parties, his honor, Judge Wallace, was duly commissioned by his excellency, the governor, in place of the Associate Justice thus disqualified under the provisions of section 6 of article IV. of the Constitution; and the court being thus constituted, heard this case in January, 1891, and rendered the judgment now in question.[1] Under this state of facts it is contended on behalf of the appellant: 1st. That a Chief Justice is an essential constituent of the Supreme Court, and consequently when, as in this case, that office has become vacant by the death of the incumbent, the two surviving Associate Justices cannot, under the provisions of the constitution of this State, constitute a valid, constitutional Supreme Court. 2nd. That if this position cannot be sustained, then a Supreme Court composed of one Associate Justice and a person "learned in the law" commissioned by the governor in place of the other Asso-

[1] See 34 S. C., 112.

ciate Justice, disqualified as above stated, to hear and determine a given case, is not a valid constitutional tribunal.

Although we think that the first question has already been concluded by the principles laid down in the case of *Sullivan* v. *Speights* (14 S. C., 358), yet, in deference to the earnestness and ability with which the view now contended for by the appellant has been presented by his counsel, we are not unwilling to reconsider the whole question.

It seems to us that the express terms of the Constitution in section 2 of article IV. leave no room for doubt as to its true construction. That section reads as follows: "The Supreme Court shall consist of a Chief Justice and two Associate Justices, any two of whom shall constitute a quorum. They shall be elected by a joint vote of the general assembly for the term of six years, and shall continue in office until their successors shall be elected and qualified. They shall be so classified that one of the Justices shall go out of office every two years." It will be observed that this section provides: 1st. For the number and titles of the officers who are to constitute the court. 2nd. What portion of the whole number shall constitute a quorum. 3rd. The mode of election and term of office of these officers. 4th. Such a classification of these officers as shall insure an election for one of these officers every two years. It is also manifest that the first provision, fixing the number of members of the Supreme Court, is qualified by the second provision, prescribing that a portion, less than the whole number, shall constitute a quorum, which unquestionably means such a proportion as will be competent to transact the business committed to the body or tribunal to which the term is applied. So also the third provision, as to the term of office, is likewise qualified by the fourth, at least so far as the first election was concerned, in order to insure the classification which was more distinctly provided for in the next succeeding section; which provision it has been held in *Simpson* v. *Willard* (14 S. C., 191), applies as well to the Chief Justice as to the Associate Justices.

While, therefore, the section under consideration does declare in general terms that the Supreme Court "shall consist of a Chief Justice and two Associate Justices," this general declaration is

qualified by the words immediately following, in the same sentence, "any two of whom shall constitute a quorum;" the plain meaning of which is, that while the number composing a full court is three, yet *any* two of the three named shall constitute a quorum for the transaction of any business committed to such tribunal. The language being "*any* two" of the three officials just named, we are unable to conceive by what authority a court could construe such language as confining the provision to some particular two of the three; for that would entirely destroy the force of the word "any," and render necessary the interpolation of some other words not found in the section. The fact that there is a difference in official title between the Chief and his Associates, and that the general assembly has by statute provided a different salary and a higher rank for the Chief Justice, and has invested him with certain powers not conferred upon the Associate Justices, cannot affect the question as to whether the constitution has made the Chief Justice one of the essential elements of the Supreme Court, for that must be determined by the provisions of the constitution itself; and, as we have seen, those provisions do not either in express terms, or by necessary implication, constitute the Chief Justice an essential element of the Supreme Court, in such a sense as without that officer there can be no such court competent to transact the business appertaining to such a tribunal. On the contrary, as it seems to us, the terms of the constitution necessarily imply that *any* two of the three officers composing a full court are competent to transact such business, whether such two consist of the Chief Justice and one of the Associate Justices, or of the two Associate Justices only.

It is contended, however, that there cannot be a constitutional quorum without there is in existence the full number of members provided for by the constitution. If this proposition be true as applied to the Supreme Court, we see no reason why it should not be true of every other body of which a number less than the whole is legally declared to be a quorum; and we think we may safely venture to say that such a proposition as to any other body has never been accepted and never could be accepted as correct, without paralyzing, to some extent at least, the arm of at least two of the great departments of the

government. Such a proposition rests upon a fundamental mis-conception of the term "quorum" and the purposes for which it is used. The very purpose in providing for the transaction of business of any given body or tribunal by a quorum is to prevent the stoppage of the public business when a portion of the whole membership may from *any* cause fail to attend at the time appointed, and whether such failure results from death or some temporary cause, cannot affect the question. The mischief intended to be provided against is the failure of the whole number to attend; and we do not see how it can possibly make any difference whether such failure results from one cause or another.

Notwithstanding the criticism which has been so freely indulged in, of the illustration used in *Sullivan* v. *Speights* (14 S. C., 358, *supra*), drawn from the constitutional quorum of the house of representatives, we still think the analogy is striking. The Constitution, in section 4, of art. II., declares that : "The house of representatives shall consist of one hundred and twenty-four members," and in section 8, of the same article, that, "The senate shall be composed of one member from each county," except Charleston, which shall be allowed two senators; and then in section 14, of the same article, it is declared that "a majority of each house shall constitute a quorum to do business." Now, confining our attention to the house of representatives, is it not perfectly apparent that the language found in these constitutional provisions, is practically identical with a declaration that "the house of representatives shall consist of one hundred and twenty-four members, any sixty-three of whom shall constitute a quorum ;" and if such was the language, the analogy would be perfect. If the house consists of one hundred and twenty-four members, and a majority of the house is declared to be a quorum, it is practically the same thing as saying that any sixty-three members of the house shall constitute a quorum; and this is what has been said in the case of the *State* v. *Hayne and Mackey*, 8 S. C.. 367.

A similar illustration may be drawn from the undisputed practice of the highest tribunal in this country. In the act of congress (Rev. Stat. U. S., sec. 673), providing for the organiza-tion of the Supreme Court of the United States, the language

used is practically identical with that found in our constitution, establishing the Supreme Court of this State, viz., that "the Supreme Court of the United States shall consist of a Chief Jus-tice of the United States and eight Associate Justices, any six of whom shall constitute a quorum," and although, upon two comparatively recent occasions, that tribunal has been deprived by death of its Chief Justice, the business of the court has been proceeded with, without question, so far as we are informed, by the surviving Associate Justices.

Again, it is urged that the court, in rendering its decision in *Sullivan* v. *Speights, supra,* failed to distinguish between the simple absence of one of the constituent members of the Supreme Court and a vacancy in the office of one of the members of the court; and did not distinguish between the effect of a resignation and the effect of a death of one of the members of the court. And in this connection it is contended that the court overlooked the provisions of section 6 and section 11, of art. IV., of the Constitution, as well as that portion of section 2, which declares that the Chief Justice and Associate Justices "shall continue in office until their successors shall be elected and qualified." While it is quite true that these sections, thus claimed to have been overlooked, are not specially referred to in the opinion prepared by the late Chief Justice in *Sullivan* v. *Speights,* yet it by no means follows that such sections were overlooked. On the contrary, it is well known to the surviving members of the court, as it was then constituted. that the whole subject was carefully examined and thoroughly discussed before the opinion was prepared. which expressed the deliberate opinion of every member of the court. This fact is not mentioned with a view to forestall further discussion of the sections just referred to, but simply for the purpose of removing or preventing any impression which might possibly arise, that so grave a question as the court was then called upon to decide, received but slight consideration.

Recurring to these provisions, which are supposed to have been overlooked, let us inquire how they affect the question under consideration. Section 6 reads as follows: "No judge shall preside on the trial of any cause in the event

of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity," &c., and then proceeds to provide for supplying the place of any judge thus disqualified. Now, from the very terms of this section it is very manifest that its purpose was, not to declare or provide anything in regard to the necessary elements constituting the Supreme Court, but simply to prevent an interested judge from sitting at the trial of a case in which he was thus disqualified. We do not see, therefore, that this section throws any light whatever upon the question under consideration.

Section 11 is in these words: "All vacancies in the Supreme Court * * * shall be filled by election, as herein prescribed: Provided, that if the unexpired term does not exceed one year, such vacancy may be filled by executive appointment." Upon this section, in connection with the provision in section 2, that the Justices of the Supreme Court "shall continue in office until their successors shall be elected and qualified," it is argued that there can be no vacancy in the office of a Justice of the Supreme Court, except by death or by expiration of the term for which he was elected, and, as a consequence, that a resignation does not create a vacancy, because the language used in section 2—"*shall* continue in office until their successors shall be elected and qualified"—is imperative, and prevents any vacancy until the successor has, not only been elected, but has qualified. This is a decidedly novel proposition, and one which cannot readily be accepted. If well founded, then it seems to us that it would be impossible to fill the office of a Justice who resigns during his term, or who accepts some incompatible office, or removes from the State. For the only provision is that "all *vacancies* shall be filled" either by election or appointment, accordingly as the unexpired term may be for a year or more, and if resignation, acceptance of an incompatible office, or permanent removal from the State creates no vacancy, then we see no authority for holding an election or making an appointment to fill the office which had thus been deserted. A construction leading to such results would not readily be accepted, even if the express terms of the constitution pointed more clearly to such a conclusion than they do.

The view contended for rests largely upon the assumption that the words, "*shall* continue in office until their successors shall be elected and qualified," must be construed as imperative, and that the effect of these words is to forbid a Justice of the Supreme Court from vacating his office by resignation or otherwise, before the expiration of the term for which he has been elected. But this view ignores the well settled rule that in the construction of a statute or a constitution, the word "shall" may receive a permissive, rather than an imperative, interpretation, when necessary to carry out the true intent of the provision in which such word is found. Endlich on Interpretation of Statutes, section 316; *Railroad Company* v. *Hecht*, 95 U. S., 168. See, also, Potter's Dwarris on Statutes, 220; Sedgwick on Statutes and Constitutional Law, 438–9. It seems to us that the manifest object of the section of the constitution in which the words relied upon occur, was *not* to require imperatively that a Justice of the Supreme Court should, under all or any circumstances, hold his office until his successor might be elected and qualified, but simply to permit him to do so. The purpose was, not to compel an officer to remain in office until his successor should be elected, but only to permit him to do so.

The framers of the constitution must be regarded as having contemplated the contingency that at some time all of the members of the Supreme Court would not be in attendance, and, therefore, to provide for such a contingency, after declaring who should constitute the Supreme Court they immediately afterwards, and in the same sentence, qualified this general declaration by providing that any two of the constituent members of the court should constitute a quorum, so that the court might proceed with its business just as if the court were full. Any other view would, it seems to us, completely nullify the provision for a quorum. There is nothing whatever in the constitution indicating an intention that the provision for a quorum should only apply in case of a temporary absence of one of the members of the court; and, on the contrary, the language used is equally applicable where the failure of such member to attend is occasioned by death, as where it results from some temporary cause. Such, as we have seen, is the accepted view in relation to the highest

judicial tribunal in this country, where the language constituting it is practically identical with that which we are called upon to construe, and such, so far as we are informed, is the universally accepted view in relation to all bodies where provision is made for a quorum.

We are at a loss to perceive how the provision in section 11, of article IV., for filling all vacancies in the office of a Justice of the Supreme Court can affect, or in any way qualify, the distinct declaration that any two of the Justices shall constitute a quorum. For the framers of the constitution must be regarded as knowing that some time would necessarily elapse before a vacancy could be filled, and the very purpose of the provision for a quorum was to enable the tribunal to proceed with its business during such time as might elapse before the vacancy could be filled, so as to prevent delay in the transaction of the public business.

We are entirely satisfied, therefore, that, in any view of the question, where the office of Chief Justice has been vacated by death, the two surviving Associate Justices, constituting a quorum of the court, are fully competent to exercise all the powers conferred upon the Supreme Court.

The second question does not seem to have been seriously pressed in the argument, and we have no doubt as to its solution. When his honor, Judge Wallace, was commissioned by the governor, under the provisions of section 6, of article IV., of the Constitution, to take the place of Mr. Justice McGowan, disqualified, "for the trial and determination" of this case, he thereby became *pro hac vice* an Associate Justice of the Supreme Court, and, as such, invested with all the powers incident to that office, so far as the trial and determination of this case was concerned, and hence we are of opinion that the Supreme Court, composed of the senior Associate Justice and Judge Wallace commissioned to preside in this case, as above stated, constituted a legal and competent tribunal, fully authorized to render the judgment in question in this case.

In accordance with these views, the order refusing the motion to set aside the judgment in this case, because rendered by an illegal and incompetent tribunal, has heretofore been entered.