THE NATIONAL CITY BANK OF NEW YORK ET AL., Petitioners and Appellants, *v.* DISTRICT COURT OF HUMACAO ET AL., Respondents and Appellees.

No. 7167. Argued November 21, 1935.—Decided January 13, 1936.

344

*Fiddler, Córdova & McConnell,* for appellants.  *Leopoldo Feliú* for appellees Fernández-Garzot.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an appeal taken to the Supreme Court from a decision of one of its justices, making permanent an alternative writ of prohibition directed to one of the district judges of the Island. The appeal was taken pursuant to section 9 of the Act fixing the duration of the terms of the Supreme Court of Puerto Rico, approved March 1, 1902, as amended by Act No. 59 of 1931 (Session Laws, p. 404), which reads as follows:

"Section 9.—One of the justices of the Supreme Court shall always remain in the Capital of Porto Rico when the Court is not in session, and said justice shall have power to issue inhibitory writs of *certiorari,* of *mandamus,* of *quo warranto,* and of *habeas corpus;* but his decision in such cases shall be subject to revision by the Su-

preme Court which, whenever so requested by the interested party
within the ten days following notice of such decisions, shall revise the
decision of the judge in chambers in any of said cases and shall render
such decision as it deems proper.

"The judge in chambers may also grant extensions and admit ap-
peals and other recourses to the Circuit Court of Appeals or other
Federal Court, in those cases in which it may be done by the Supreme
Court; may fix the bond which, to answer for payment of costs,
must be filed by the appellant; may order such stay of proceedings
as could be ordered by the Court, and may fix the *supersedeas* bond
that may be required, if proper."

The hearing of the appeal was set for November 18, 1935.
The Associate Justice who had rendered the decision sought
to be reviewed, did not sit with the court at such hearing,
and petitioners through their attorneys requested the par-
ticipation therein of said Justice. In order to consider the
question thus raised, the hearing was postponed until Nov-
ember 21, 1935, when the following decision was entered.

"As to the motion of the petitioners, requesting that Mr. Justice,
Hutchison who, as acting judge in vacation (*juez de turno*), author-
ized the issuance of the writ of prohibition now sought to be reviewed,
should sit with the reviewing court, since said Justice had decided
not to participate in such review, and as his intervention therein is
not absolutely necessary, for the reasons which will be set forth in the
opinion to be rendered upon the final decision of this appeal, the
said motion is denied."

■ The duties imposed by the above-quoted act on the
Justices of the Supreme Court and the powers thereby
granted to them to act separately, are independent of the
duties imposed and the powers given to them by the Organic
Act and other laws, and to be discharged and exercised during
such periods as the court is not in session. Act fixing the
terms of the Supreme Court of Puerto Rico, approved March
1, 1902, as amended by Act No. 4 of 1914 (Session Laws, p.
135).

A justice who thus acts separately is designated as acting
judge in vacation (*juez de turno*). Is such justice absolutely

bound to sit with the court when the latter meets to consider an appeal authorized by law from a decision rendered by him in vacation?

The act is silent on this point and the parties have not cited to us any authorities, nor have we been able to find any cases directly in point.

In support of their contention that an acting judge in vacation (*juez de turno*) has the unavoidable duty of sitting with the court on the hearing of an appeal taken from his own decision, the petitioners invoke, in the first place, the English precedents. In their brief they say:

"In England, the royal courts of original jurisdiction, that is, the courts of 'common pleas' and 'King's Bench', have always been courts composed of several judges (*tribunales colegiados*). The trials, which in said courts ordinarily are by jury, in both civil and criminal cases, are held before one of the judges of the court, who passes upon the admissibility of the evidence offered and instructs the jury. After the verdict has been rendered, the losing party may and usually does resort to the court in bank, requesting a new trial. In such cases it has been the practice in the English courts to have the judge who presided over the trial sit with the court when the appeal is heard and his rulings upon the evidence and his instructions to the jury are to be reviewed. Although this appears from thousands of English decisions covering the period from the fourteenth century to the present time, in view of the difficulty of obtaining the corresponding reports in Puerto Rico, and of the limitations of this brief, we will only cite two decisions which in our judgment clearly show the procedure followed in England."

Accordingly, they cite and analyze the cases of *Kelner* v. *Baxter*, L. R. 2 C. P. 174,, *Jeune* v. *Ward*, 1 B. & Al. 653.

Referring to the American precedents, the petitioners say:

"Although, as we have stated, we have been unable to find in the United States a case analogous to the present one, some light is given by the cases in which one of the Justice of the Supreme Court also acts as Circuit Judge. It must be borne in mind that these cases are different from the one at bar in that in the former two different tribunals are concerned, whereas in the latter only one court is involved.

"In the cases in which a circuit judge acts as Judge of a Federal District Court, and an appeal is taken from his decision to the Circuit Court of Appeal's the Congress has expressly provided that the circuit judge shall not sit with the latter court. This statutory provision is found in the U. S. Code, title 28, section 216, as follows:

" 'No judge before whom a cause or question may have been tried or heard in a district court, or existing-circuit court, shall sit on the trial or hearing of such cause or question in the circuit court of appeals.'

"As to the Justices of the Supreme Court of the United States who also acted as circuit judges, we have been unable to find any case in which said Supreme Court has dealt with this question, but we do know that the practice in said Court was that the justices thereof did not abstain from participating when an appeal was taken to that Court from their decisions rendered as circuit judges. This appears from the cases of *Clerk & Nightingale* v. *Russell*, 3 Dallas 415, 1 L. Ed. 661, and *Stuart* v. *Laird*, 1 Cranch 299, 2 L. Ed. 115. In the last of these cases, although theopinion of the Court does not deal with this point, one of the attorneys in his argument as reported in 2 L. Ed. 117, attacked the practice, not in order to obtain that one of the Justice of the Supreme Court should abstain from sitting with the Court in the case, but to maintain that the Circuit Court was not duly constituted, inasmuch as one of Justices of the Supreme Court had presided over said Circuit Court. Counsel argued that the Supreme Court was composed of six justices; and that the litigants were entitled to have their cases heard by six impartial judges; that a judge who had already decided the matter in a lower court could not be altogether impartial. Said attorney cited, by way of illustration, the case of *Clerk & Nightingale* v. *Russell, supra,* and stated that said case was first tried before a circuit court, with the intervention of Mr. Chief Justice Elseworth, and the judgment, upon being reviewed by the Supreme Court, was reversed for error in pleading, and a new trial ordered; that the second trial was held before another Justice of the Court, Mr. Justice Cushing; that upon the rendition of the judgment of the Circuit Court, presided over by Mr. Justice Cashing, a review by the Supreme Court was also sought, and that the latter court again reversed the judgment, Mr. Chief Justice Elseworth and Mr. Justice Cushing dissenting. Counsel in his brief admitted that the practice from 1789 to 1801 was that the Justices of the Supreme Court should act in the Circuit Courts, but he maintained that in view of certain statutory provisions said practice ought to be changed.

The Supreme Court decided contrary to this contention, that is, in the sense that the Justices of the Supreme Court were duly authorized to act as circuit judges. The report of the case, at 2 L. Ed. 118, indicates that the Chief Justice, having tried the cause in the court below, declined giving an opinion. We do not know whether this means that he took no part in the decision, or that he did not desire to deliver the opinion of the Court. We think that it was the latter, for from the case of *Clark & Nightingale* v. *Russell,* cited by the losing party, it appears that the practice in the Supreme Court, at least up to that time, was that the Justices of the Supreme Court did not abstain from participating because they had heard the case in the Circuit Court.

"As to the state courts, we have only been able to find a note in 25 L.R.A. 128, in which all the cases cited are to the effect that, in the absence of a statutory prohibition, the fact that a judge heard the case in a lower court is not sufficient cause to prevent him from hearing the case on appeal. Cases are cited from Vermont, Georgia, New Jersey, New York, Texas, and Louisiana. In 15 R.C.L. 538, the contrary doctrine is stated, that is, that the judge of an inferior court can not sit in an appellate court to review his own decision; but all the cases cited in support of this proposition in said treatise are Federal cases, which are governed by the express provisions of the Federal statutes that we have already cited. In 33 C. J. 1010, the doctrine is correctly stated, and it is there said that where there is no provision of law to the contrary, a judge who has presided at a trial or a hearing is not thereby disqualified to review his judgment or order, even though such review is sought by appeal to a court of which he has become a judge."

We will complete the citation from Corpus Juris, transcribing it in full. It reads as follows:

"*Review of Own Decision. 1. In General.* Where there is no provision of law to the contrary, a judge who has presided at a trial or a hearing is not thereby disqualified to review his judgment or order rendered therein, and this is so whether such review is sought by appeal to a court of which he has become a judge, by suit to vacate it, or by a different character of action, involving substantially the same facts, and issues brought in another court of which he has been selected judge. However, this practice has been condemned, and, although the judge may not be legally disqualified, he should be excused from so participating, if it can be legally permitted so to excuse

him, as by the calling of a judge of an inferior court when this is permitted by law. In some jurisdictions, by force of the constitution or a statute, an appellate judge is disqualified from participating in the decision of a cause which was determined by him in the lower court. Where the constitution confers upon a judge the right to review his own decisions when he becomes a member of an appellate court, contrary acts of the legislature are inoperative.

"2. *Nature and Extent.* The nature and extent of the disqualification of a judge to review his own decision depends on the constitutional or statutory provision creating it. Ordinarily the disqualification applies only to the identical case in which the judge acted in the lower court. Under some provisions a judge is disqualified to participate in the trial on appeal of any case in which he has as trial judge decided any question involved on the appeal. Under other provisions it is held that a judge who only makes a preliminary, collateral, or interrogatory order is not disqualified."

From all that has been said and transcribed above, it may be seen that where there is no law regulating the matter, the better rule, that which best conforms to human nature and is the most just, and which the better practice establishes, is the one we have adopted by our decision of November 21, 1935, to wit: That the justice who individually rendered the decision appealed from is not disqualified to sit with the court when the latter meets to pass upon the appeal, and ordinarily it is discretionary with said justice whether he will participate in such hearing, unless the court considers his intervention as absolutely necessary, in which case it may so rule even though the justice has elected not to take part in the appeal.

■ The above rule may well be adopted in this island, in view of the legal organization of this court. Having been created by General Order No. 118, series of 1899, to be composed of a Chief Justice and four Associate Justices ("Laws, Ordinances, Decrees, and Military Orders having the Force of Law, Effective in Porto Rico, May 1, 1900," Part 1, p. 610) and continued in existence by the Organic Act of April 12, 1900, sec. 33, with power vested in the Legislature of the Island to legislate with reference thereto, a law was duly

enacted in January 31, 1901, providing that "Three members of the Supreme Court of Porto Rico shall hereafter constitute a quorum," Revised Statutes and Codes of Porto Rico, 1902, p. 70, Code of Civil Procedure, 1933 ed., p. 287, which law is at present in full force and effect, and which, as maintained by the appellants in their brief, sets forth the universal principle applying to all bodies, boards, courts, and organisms consisting of several members, that a quorum shall consist of a majority of the members, and that there being a quorum, the body, board, court, or organism in question is properly constituted and empowered to act.

Thus, in South Carolina, where a person learned in the law may be commissioned by the Governor, in accordance with paragraph 6, article 4, of the Constitution of the State, to act for an Associate Justice of the Supreme Court who is disqualified to sit in a particular case, said Supreme Court, in the case of *Williams* v. *Benet,* reported in 14 L.R.A. 825, held:

"There is a quorum of the supreme court under a constitutional provision that the court 'shall consist of a chief justice and two associate justices, any two of whom shall constitute a quorum' where the two associate justices or one of them and a person 'learned in the law', commissioned by the governor in place of the other associate justice who is disqualified to sit, are present in the case although there is a vacancy in the office of the chief justice."

In the State of New York, in the case of *Harroun et al.* v. *Brush Electric Light Co.,* 152 N. Y. 212, 38 L.R.A. 615, it was held that:

"When four of the five judges composing a court are declared by the Constitution to be a quorum their agreement in a decision, the other being absent, makes the decision unanimous, within the meaning of a statute requiring leave to appeal from unanimous decisions."

See 7 R.C.L. 998 and *Long* v. *State,* 59 Tex, Crim. 103; 127 S. W. 551; Ann. Cas. 1912 A. 1244, especially the extensive note appearing at page 1251.

So then, in accordance with the law and the jurisprudence, the Supreme Court is legally constituted both when the five justices that compose it intervene in any matter submitted to it and when only four or three of said justices sit. When only three justices are present, the tribunal is as legally constituted and has the same powers and duties as when four or five justices sit, and the right vested in the litigants is that of having their cases considered and decided by the court legally constituted.

That being so, the acting judge in vacation (*juez de turno*) can properly abstain from sitting in the proceedings for review without this affecting the work of the tribunal and without violating the law under which the same was established, but on the contrary complying with its letter and spirit. And it has been thought advisable to leave the door open to his intervention, because it may happen, for example, that two of the other justices should be legally disqualified to act and the intervention of the acting judge in vacation would then be absolutely necessary in order to have a quorum and to be able to act in accordance with the law. But that is not the case here.

Having stated the grounds for the order of November 21 last, we will now proceed to consider the appeal on its merits.

■■ In the suit which was brought in the District Court of Humacao by Rosario and Matilde Garzot and their husbands, Faustino and Angel Fernández, and which is still pending on appeal before the Circuit Court of Appeals for the First Circuit, the plaintiffs petitioned the district court for an order directing the intervener, The National City Bank of New York, to deliver to them a certain sum of money held in its possession as the proceeds of the sale of certain sugar levied upon to secure the effectiveness of any judgment that might be rendered by virtue of the complaint in intervention, together with other sugar attached but not sold, and the district court so directed by an order of August 30, 1935,

which was notified to the parties on the 3d of the following September.

On September 11, 1935, the marshal of the District Court of San Juan made demand upon Burt O. Clark, in his capacity as general supervisor of the National City Bank of New York, to comply with said order of August 30, 1935, and Clark refused to do so after consulting his attorney, on the ground that said order was not yet final (*firme*), the time to appeal not having expired and the bank having the intention of appealing, which in point of fact it did on September 12, 1935, within the period prescribed by law.

On the 14th of the same month of September, the district court, on motion of the plaintiffs in the case, issued an order against Clark directing him to appear on the 24th before said court, to show cause why he should not be punished for contempt of court for his failure to comply with said order of August 30, 1935.

On September 24, 1935, a hearing was had on the rule to show cause, and on the following day, the bank and Clark applied to Mr. Justice Harvey M. Hutchison, acting judge in vacation of this court, which was then in recess, and alleged that despite the fact that the attention of the district court had been called to its lack of jurisdicion by reason of the appeal filed, said court had taken the matter under advisement and had acted in such a way that petitioners and their attorney had the firm belief that it was the intention of the court to find Clard guilty of the supposed contempt; and they requested the issuance of a writ of prohibition directed to Rafael Arjona Siaca, Judge of the District Court of Humacao, prohibiting him from further acting under his aforesaid orders of August 30 and September 14, until further order, and directing him to appear and show cause why he should not be definitely prohibited from acting, and the said order of September 14, 1935, finally annulled and set aside.

In the petition for said writ there was transcribed in full the contract entered into between the plaintiffs and the bank

on October 13, 1934, by virtue of which the bank claims the right to retain the proceeds of the sugar despite the annulment of the attachment and the dismissal of the appeal taken from the order declaring such nullity, as the essential part of the suit involving its complaint in intervention is still pending.

One of the clauses of said contract, the seventh, reads as follows:

"VII.—Said Eastern Sugar Corporation shall notify the parties to this agreement, by letter to their respective post-office adresses, the receipt of each sum received in payment of any sugar sold by it by virtue of this agreement, immediately after the receipt thereof and shall deliver the same to the party of the second part as received; and when said sums are receivd by the latter, said party of the second part shall likewise notify any of the said Fernández, parties of the first part, stating the date and sum received; and said party of the second part shall keep on deposit, in trust in a special account, the sums received by it. The sums received by the party of the second part, pursuant to this agreement, will draw interest which said party of the second part shall deposit and credit, at the rate of two and one-half per cent (2½%) per annum, computed monthly on the basis of the minimum monthly balance and the sums thus received by it, plus the interest thereon accrued, shall be applied by the party of the second part as follows:

"1.—In case that in the above-mentioned legal action a final and definitive (firme) judgment is rendered deciding and adjudging that the party of the second part is entitled to the lien it claims, whether totally or partially, the party of the second part shall retain and appropriate any sum which by said judgment it may be entitled to recover upon its alleged lien, out of the total sum then in its possession, together with accrued interest, in accordance with this agreement, serving notice thereof on any of the gentlemen, parties of the first part, and if after said sum shall have thus been collected by the party of the second part there should remain a balance or difference in excess of the sum to which said party of the second part may be entitled, the latter shall immediately pay said balance or difference to the party of the second part, together with accrued interest, at the above-agreed rate.

"2.—If by the said judgment it is decided and adjudged that the party of the second part is not entitled to the alleged lien, then the

latter shall pay and deliver forthwith to the party of the first part the total sum by it received by virtue of this agreement, together with accrued interest at the rate hereinbefore agreed."

The acting judge in vacation heard the interested parties, who also filed briefs, and on October 3, 1935, ordered the issuance in ordinary form of the writ sought.

The plaintiffs in the suit requested a rehearing and the acting judge in vacation set the 8th of the same month to hear the parties again, on which day the plaintiffs and the petitioners filed supporting affidavits and the district judge, by a written motion, requested that the writ issued be discharged.

On October 16th, the acting judge in vacation made the following decision:

"On reading the petition filed in this case as to the district judge, and the motion for reconsideration of the order directing the issuance of the writ of prohibition, filed by the other respondents, and after hearing all the interested parties, upon an examination of the briefs in the light of the petition and of the motion of the district judge 'requesting the discharge of the preliminary writ, and objecting to the granting of the peremptory writ requested by the petitioner,' and considering the special circumstances of this case, said motions are denied and the writ issued in the ordinary form is hereby made permanent against the district judge in accordance with the order rendered on the 3d of the present month."

Thereupon the plaintiffis in the main suit took an appeal to the Supreme Court.

They maintain that the writ of prohibition should be annulled, in the first place, because the district court had acted with full jurisdiction in the contempt proceedings, as the appeal taken from the order which was disobeyed was ineffective since said order was not appealable, and, in the second place, because petitioners had an adequate remedy at law in case Clark should have been found guilty of contempt of court, and because, as it appears from the petition that when the same was filed the contempt proceedings were still pending, said court should be given an opportunity to decide for itself whether or not it has jurisdiction to act.

As to the appealability of the order of August 30, 1935, it is sufficient for us to refer to what we have just decided in case No. 7171. The order was appealable, and hence once an appeal therefrom was taken the jurisdiction of the trial court to enforce the same ceased. Section 298 of the Code of Civil Procedure.

As to the other questions raised, the applicable jurisprudence is summarized in 22 R.C.L. 27, as follows:

"As a general rule, a writ of prohibition will not be issued to an inferior court unless the attention of the court whose proceedings it is sought to arrest has been called to the alleged lack or excess of jurisdiction, the foundation of the rule being the respect and consideration due to the lower court and the expediency of preventing unnecessary litigation. This requirement is made by rule of court in some jurisdictions. The objection in the lower court cannot be said to be jurisdictional, and the higher court may and will proceed without such objection in proper cases. The rule is one of discretion only, and is not in any sense rigid or arbitrary. Thus no objection in the court sought to be prohibited need be made where the proceeding is ex parte, and there was no opportunity to object; where the applicant was prevented by artifice or fraud from making objection; where the lack of jurisdiction is apparent on the face of the proceedings; where the intention of the inferior court to act beyond its jurisdiction is made apparent in any way and it is obvious from the whole proceedings that such an application would be futile; or where the necessary delay would be highly injurious to the interests of the applicant. The matter of judicial courtesy should yield to subtantial personal rights of litigants, such as a sacrifice of their liberty."

The decisions supporting the above text have been examined and, after a consideration of the facts of the instant case and of the attendant circumstances in the light of the jurisprudence established in said decisions, we are of the opinion that the acting judge in vacation acted correctly in issuing the alternative writ, in refusing to reconsider his decision, and in making permanent the writ so issued.

Although it is true that the question of jurisdiction was raised before the district court, and that, in view of such

fact, it would have been natural to wait until that court itself decided the question, nevertheless, as it appears from the petition and still more clearly and forcefully from the affidavit of the attorney for the petitioner of October 8, 1935, answering the affidavit of the attorney plaintiffs in the main action of the same date, and also from the very motion of the district judge requesting the annulment of the preliminary writ issued, that the court had the intention of sentencing petitioner Clark to imprisonment for contempt of court, which thus involved a question of personal liberty, the intervention of the superior court, which was discretionary, was justified. This procedure followed a straight line, the shortest path to go into the merits of the question and to finally decide it.

For the reasons stated, the appeal must be dismissed and the orders appealed from, rendered by the acting judge in vacation on October 13 and 16, 1935, must be affirmed.

Mr. Justice Córdova Dávila and Mr. Justice Hutchison took no part in the decision of this case.