THE NATIONAL CITY BANK OF NEW YORK y su supervisor general para Puerto Rico, BURT O. CLARK, peticionarios, *v.* RAFAEL ARJONA SIACA, JUEZ DE LA CORTE DE DISTRITO DE HUMACAO; ROSARIO GARZOT DE FERNÁNDEZ, MATILDE GARZOT DE FERNÁNDEZ, FAUSTINO FERNÁNDEZ RODRÍGUEZ y ANGEL FERNÁNDEZ ORTIZ, demandados.

No. 7167.—*Sometido:* Noviembre 21, 1935. *Resuelto:* Enero 13, 1936.

*Fiddler, Córdova & McConnell,* abogados de los peticionarios; *Leopoldo Feliú,* abogado de los demandados esposos Fernández Garzot.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El presente es un recurso. de revisión interpuesto para ante el Tribunal Supremo contra la resolución de uno de sus jueces convirtiendo en definitivo el auto inhibitorio que mandara expedir en forma ordinaria dirigido a uno de los jueces de distrito de la isla. Se interpuso de acuerdo con la sección 9 de la Ley fijando la duración de las sesiones del Tribunal Supremo de Puerto Rico, aprobada en marzo 1, 1902, tal como fué enmendada por la Ley núm. 59 de 1931, Leyes de 1931, p. 405, que dice:

"Sección 9.—Uno de los jueces del Tribunal Supremo permanecerá siempre en la capital de Puerto Rico, cuando el tribunal no estuviere en sesión, y dicho juez tendrá facultad para dictar autos inhibitorios, de *certiorari*, de *mandamus*, de *quo warranto* y de hábeas corpus; pero su resolución en tales casos estará sujeta a revisión por el Tribunal Supremo, el cual, siempre que ello fuere solicitado por parte interesada dentro de los diez días después que le fuere notificada, revisará la resolución del juez de turno en cualquiera de dichos casos, y dictará la que a su juicio proceda.

"Podrá asimismo el juez de turno conceder prórrogas y admitir apelaciones y demás recursos para ante la Corte de Circuito de Apelaciones, u otros Tribunales Federales, en los mismos casos en que pueda hacerlo el Tribunal Supremo; podrá fijar la fianza que para responder de las costas deba prestar el apelante; dictar las órdenes de suspensión de procedimientos que pudiera dictar el tribunal, y fijar la fianza *supersedeas* que fuere requerida, si procediere."

Señalada la vista del recurso para noviembre 18, 1935, se abstuvo de intervenir en ella el juez asociado que dictó la resolución cuya revisión se solicita y los peticionarios por sus abogados requirieron la intervención de dicho juez. A los efectos de estudiar la cuestión suscitada, la vista se pospuso para el 21 de noviembre, 1935, en cuyo día se decidió como sigue:

"A la solicitud formulada por los peticionarios a los efectos de que el Juez Asociado Sr. Hutchison que como juez de turno ordenó la expedición del auto inhibitorio cuya revisión se pide, forme parte del tribunal que de la revisión conoce, habiendo optado dicho Juez Asociado por no formar parte del tribunal, ni siendo absolutamente necesaria su intervención, por los motivos que se consignarán en la

opinión que se emita al decidir definitivamente el recurso, no ha lugar.''

■ Los deberes que impone y los poderes que confiere la ley que dejamos tránscrita a los jueces del Tribunal Supremo para actuar separadamente lo son, independientemente de los deberes impuéstosles y de los poderes conferídosles por la Ley Orgánica y otras leyes, para ser cumplidos y ejercitados durante los períodos en que el tribunal se encuentra en receso. Ley fijando la duración de las sesiones del Tribunal Supremo de Puerto Rico aprobada en marzo 1, 1902, tal como quedó enmendada por la Ley núm. 4 de 1914, Leyes de 1914, p. 141.

Al juez que separadamente actúa se le designa con el nombre de juez de turno. ¿Tiene ese juez el deber ineludible de formar parte del tribunal cuando éste se reúne para conocer del recurso de revisión que la propia ley otorga contra sus resoluciones?

Nada dice expresamente el estatuto sobre el particular y nada han citado las partes ni hemos podido encontrar nosotros que se haya establecido por la jurisprudencia en casos exactamente iguales.

Para sostener su contención de que los jueces de turno tienen el deber de formar parte del tribunal en casos de revisión de sus propias resoluciones, invocan los peticionarios, en primer término, los precedentes ingleses. Dicen, en su memorándum:

''En Inglaterra, las cortes reales de jurisdicción original, o sea, las cortes de 'common pleas' y de 'King's Bench' han sido siempre tribunales colegiados. Los juicios, que en dichas cortes por regla general son por jurado, tanto en lo civil como en lo criminal, se celebran ante un solo juez del Tribunal, el cual resuelve sobre la admisibilidad de la evidencia ofrecida e instruye al jurado. Luego de rendido el veredicto, la parte perdidosa puede, y suele, recurrir ante el Tribunal en pleno, en solicitud de un nuevo juicio. En tales casos ha sido siempre la práctica de los Tribunales ingleses el que intervenga en el recurso de revisión el juez ante quien se vió el juicio, y cuyas resoluciones en cuanto a evidencia y a instrucciones

al jurado han de revisarse. Aunque esto aparece de miles de decisiones inglesas, desde el siglo catorce hasta la fecha, dada la dificultad de conseguir dichas decisiones en Puerto Rico, y las limitaciones de este memorándum, sólo citaremos dos que a nuestro parecer claramente exponen la práctica seguida en Inglaterra.''

Y citan y analizan entonces los casos de *Kelner* v. *Baxter*, L. R. 2 C. P. 174, y *Jeune* v. *Ward*, 1 B. & Al. 653.

Refiriéndose a los precedentes americanos, expresan:

''Aunque, como hemos dicho, no hemos encontrado en Estados Unidos situación análoga a la que nos ocupa, alguna luz arrojan los casos en que un juez de circuito federal actúa también como juez de distrito, y los casos en que uno de los jueces del Tribunal Supremo actúa también como juez de circuito. Hay que tener en cuenta que estos casos difieren del de autos por el hecho de que se trata de dos tribunales diferentes, mientras que en el caso de autos se trata de un solo tribunal.

''En los casos en que un juez de circuito actúa como juez de una corte de distrito federal y se apela de su resolución ante la Corte de Circuito, el Congreso Americano ha dispuesto expresamente que el Juez de Circuito deberá inhibirse. Esta disposición estatutaria se encuentra en la sección 216 del U. S. Code, Title 28, y reza como sigue:

'' 'No Judge before whom a cause or question may have been tried or heard in a District Court, or existing Circuit Court, shall sit on the trial or hearing of such cause or question in the Circuit Court of Appeals.'

''En cuanto a los jueces del Tribunal Supremo de Estados Unidos que actuaban también como jueces de las cortes de circuito, no hemos podido encontrar ningún caso en que dicho Tribunal Supremo trate la cuestión, pero sí sabemos que la costumbre en dicho Tribunal era que los jueces del Tribunal Supremo no se inhibían al apelarse ante dicho Tribunal de sus resoluciones como jueces de circuito. Esto aparece de los casos de Clerk & Nightingale v. Russell, 3 Dallas 415, 1 L. Ed. 661, y Stuart v. Laird, 1 Cranch 299, 2 L. Ed. 115. En el último de dichos casos, aunque el Tribunal nada dice en su opinión sobre la cuestión, uno de los abogados en su argumento, tal y como aparece reproducido en 2 L. Ed. 117, ataca la costumbre, no para conseguir que se inhibiera uno de los jueces del Supremo, sino para alegar que la Corte de Circuito estaba indebidamente constituída cuando actuaba como Juez alguno de los

jueces del Supremo. Arguye dicho abogado que el Tribunal Supremo estaba constituído por seis jueces, y que las partes litigantes tenían derecho a que sus casos fueran oídos por seis jueces imparciales; que un juez que ya había resuelto el asunto en una corte inferior no podía ser del todo imparcial. Cita el abogado referido el caso de Clerk & Nightingale vs. Russell, supra, para ilustrar su argumento y expone que dicho caso se vió originalmente ante una Corte de Circuito, interviniendo el Juez Presidente del Tribunal Supremo Ellsworth, que de su resolución se recurrió ante el Tribunal Supremo, revocándose por un error en las alegaciones, y ordenándose un nuevo juicio, que el nuevo juicio se celebró ante otro juez del Tribunal, el juez Cushing; que de la resolución de la corte de circuito presidida por Cushing se recurrió otra vez ante el Tribunal Supremo, y que este último tribunal revocó por segunda vez, disintiendo los jueces Ellsworth y Cushing. En su argumento el abogado reconoce que la práctica desde 1789 hasta el 1801 había sido que los jueces del Supremo actuaran en las cortes de circuito, pero sostiene que en vista de ciertos cambios estatutarios dicha práctica debe cambiarse. El Tribunal Supremo resolvió en contra de los argumentos expuestos, o sea, en el sentido de que los jueces del Tribunal Supremo estaban debidamente facultados para actuar como jueces de circuito. El *report* del caso en 2 L. Ed 118 indica que el Juez Presidente, habiendo visto el caso en la corte inferior, se abstuvo de dar una opinión. No sabemos si esto quiere decir que no intervino o que no quiso redactar la opinión de la Corte. Creemos que fué lo último, por cuanto del caso de Clerk & Nightingale vs. Russell, citado por la parte perdidosa, aparece que la costumbre en el Tribunal Supremo, por lo menos hasta esa fecha, era la de no inhibirse los jueces del Supremo por el hecho de haber visto el caso en la Corte de Circuito.

"En cuanto a las cortes estaduales, sólo hemos podido encontrar una nota en 25 L.R.A. 128 en la que todos los casos citados son al efecto de que, en ausencia de una prohibición estatutaria, no es causa de inhibición para un juez el haber visto el caso en una corte inferior. Se citan casos de Vermont, Georgia, New Jersey, Nueva York, Tejas y Louisiana. En 15 R.C.L. 538 se expresa la doctrina contraria, o sea, que un juez de una corte inferior no puede revisar su propia decisión como juez de las cortes de apelaciones, pero todos los casos que se citan en apoyo de esta proposición en dicha obra son casos federales, que se rigen por la disposición expresa de los estatutos federales que ya hemos citado. En 33 C. J. 1010 se expresa correctamente la doctrina, diciéndose que en ausencia de alguna dis-

posición estatutaria, un juez que ha presidido un juicio o una vista no está por ese motivo descualificado de revisar su propia sentencia u orden, aún cuando ésta sea apelada a una corte de apelaciones de la cual ha venido a formar parte.''

Completaremos la cita de Corpus Juris, transcribiéndola íntegra. Dice así:

*''Revisión de decisiones propias. 1. En General.* Cuando no hay disposición legal en contrario, un juez que ha presidido un juicio o una vista no está por ello descualificado para revisar su sentencia u orden dictadas en el mismo, y esto es así, ora dicha revisión se trate de obtener por apelación a la corte de la cual él ha llegado a ser juez o por un pleito para que se deje la misma sin efecto, o por una acción de distinta naturaleza, que envuelva substancialmente los mismos hechos y cuestiones instituídos en otra corte de la cual era juez. Sin embargo, esta práctica ha sido censurada, y aunque el juez puede que no esté legalmente incapacitado, debe ser excusado de participar en esa forma, si pudiera excusársele legalmente como llamando a un juez de una corte inferior, si la ley lo permite. En algunas jurisdicciones, en virtud de la constitución o de un estatuto, un juez de una corte de apelaciones está inhabilitado para participar en la decisión de un caso que fué resuelto por él en la corte inferior. Donde la constitución le confiere a un juez el derecho de revisar sus propias decisiones, al llegar a ser un miembro de una corte de apelaciones, leyes contrarias de la legislatura son ineficaces.

*''2. Naturaleza y Alcance.* La naturaleza y alcance de la incapacidad de un juez para revisar sus propias decisiones dependen de las disposiciones constitucionales o estatutarias que la crean. Generalmente la incapacidad se aplica solamente al mismo caso en que el juez intervino en la corte inferior. Al amparo de algunas disposiciones un juez está inhabilitado de participar en la vista en apelación de un recurso en que él como juez sentenciador haya decidido cualquier cuestión envuelta en la apelación. Según otras disposiciones se sostiene que un juez que solamente dicta una orden preliminar, colateral o incidental no está incapacitado.'' 33 C. J. 1011.

Puede verse a través de todo cuanto se deja dicho y transcrito que cuando no existe ley que regule la materia la regla más sabia, la más conforme a la naturaleza humana, la que más se acerca a la justicia y la que establece la mejor prác-

tica es aquélla que adoptamos en nuestra resolución de noviembre 21, 1935, a saber: la de reconocer que el juez que dicta separadamente la resolución cuya revisión se pide no está impedido de formar parte del tribunal cuando éste se constituye para entender del recurso, dejándose generalmente a la discreción de dicho juez la decisión de formar parte o no del tribunal, a menos que éste considere absolutamente necesaria su intervención, en cuyo caso podrá acordarla aunque el juez hubiere optado por abstenerse de intervenir.

 Y a esa resolución puede llegarse perfectamente en esta Isla dada la organización legal del tribunal. Creado por la Orden General No. 118, serie de 1899, compuesto de un juez presidente y cuatro jueces asociados, 1, "Laws, Ordinances, Decrees, and Military Orders Having the Force of Law, Effective in Porto Rico", 610, y declarado subsistente por la Ley Orgánica de abril 12, 1900, Sec. 33, con poder para legislar sobre el mismo a la Legislatura de la Isla, ésta decretó en enero 31, 1901, una ley que fué debidamente aprobada por virtud de la cual se dispuso que "De aquí en adelante tres miembros del Tribunal Supremo constituirán quórum", Estatutos Revisados y Códigos de Puerto Rico, 1902, p. 721, Código de Enjuiciamiento Civil, ed. 1933, p. 288, ley que está actualmente en todo su vigor y que, como sostiene la parte recurrente en su memorándum, consagra el principio universal que rige todo cuerpo, junta, tribunal y organismo colegiado, a saber: constituye el quórum la mitad más uno y estando presente el quórum está debidamente constituído el cuerpo, junta, tribunal u organismo colegiado en condiciones y con facultad para actuar.

Así, en South Carolina, donde una persona versada en el conocimiento de la ley puede ser nombrada por el Gobernador de acuerdo con el artículo 4, párrafo 6, de la Constitución del Estado para ocupar el puesto de juez asociado de la Corte Suprema cuando el juez en propiedad se encuentra impedido de intervenir en algún caso particular, la Corte Suprema del

Estado, en el caso de *Williams* v. *Benet*, reportado en 14 L.R.A. 825, decidió:

"Hay quórum en una Corte Suprema al amparo de una disposición constitucional de que la corte 'consistirá de un juez presidente y dos jueces asociados, cualesquiera dos de los cuales constituirá quórum', cuando los dos jueces asociados o uno de ellos y una persona 'versada en el derecho', nombrada por el gobernador en sustitución del otro juez asociado que está inhabilitado de participar, están presentes en el caso aunque el puesto del juez presidente estuviera vacante."

Y en el Estado de Nueva York en el caso de *Harroun et al.* v. *Brush Electric Light Co.,* 152 N. Y. 212, 38 L.R.A. 615, se decidió que:

"Cuando la Constitución establece que cuatro de los cinco jueces de una corte constituirán quórum, el acuerdo de ellos en una decisión en que el otro estuviera ausente, hace a la misma unánime dentro del significado de un estatuto que autoriza se apele de decisiones unánimes."

Véase 7 R.C.L. 998 y *Long* v. *State,* 59 Tex. Crim. 103; 127 S. W. 551; Ann. Cas. 1912 A. 1244, especialmente la amplia nota que aparece a la página 1251.

De suerte que de acuerdo con la ley y la jurisprudencia esta Corte Suprema de Puerto Rico queda constituída legalmente tanto cuando intervienen en los asuntos ante ella sometidos los cinco jueces que la componen cuanto cuando sólo intervienen cuatro o tres de ellos. Actuando con tres jueces solamente es tan legal y tiene tantos poderes y deberes como cuando actúa con cuatro o cinco jueces y el derecho que los litigantes tienen es a que sus asuntos sean considerados y resueltos por la corte constituída legalmente.

Siendo ello así, bien puede dejar de conocer del asunto el juez de turno en el recurso de revisión sin que la marcha del tribunal se altere, sin que su ley organizadora se viole, al contrario aplicándola en su letra y en su espíritu. Y ha sido conveniente dejar la puerta abierta a la intervención, porque pudiera suceder por ejemplo que dos de los otros

jueces estuvieran legalmente impedidos y la intervención del juez de turno fuera entonces abolutamente necesaria para formar quórum y poder actuar de conformidad con la ley. Pero ése no es aquí el caso.

Expuestos los fundamentos de la resolución de noviembre 21 último, procederemos al estudio del recurso de revisión en su fondo.

■■ En el pleito iniciado en la Corte de Distrito de Humacao por las señoras Rosario y Matilde Garzot y sus esposos Faustino y Ángel Fernández, pendiente aún en apelación en la Corte de Circuito de Apelaciones del Primer Circuito, los demandantes pidieron a la corte de distrito que ordenara al interventor The National City Bank of New York que les entregara cierta suma de dinero que tenía en su poder preveniente de la venta de azúcares embargados para asegurar la sentencia que pudiera recaer a virtud de la demanda de intervención y ciertos otros azúcares también embargados no vendidos aún y la corte de distrito así lo decretó por orden de agosto 30, 1935, notificada a las partes el 3 de septiembre siguiente.

El 11 de septiembre de 1935 el márshal de la Corte de Distrito de San Juan requirió a Burt O. Clark, en su carácter de supervisor general de The National City Bank of New York, para que cumpliera la indicada orden de agosto 30, 1935, a lo que se negó Clark después de consultar con su abogado alegando que dicha orden aún no era firme, no habiendo expirado el término de ley para apelar y teniendo el banco la intención de apelar, lo que efectivamente hizo el 12 de septiembre de 1935, dentro del término de ley.

El 14 del propio septiembre la corte de distrito a solicitud de los demandantes en el pleito dictó una orden dirigida a Clark mandándole comparecer sin excusa ni pretexto ante ella el 24 para que expusiera las causas que tuviere por las cuales no debía castigársele por el desacato por él cometido al negarse a cumplir la dicha orden de agosto 30, 1935.

El 24 de septiembre, 1935, se celebró en efecto la comparecencia y al día siguiente el banco y Clark se dirigieron al juez de turno de esta Corte Suprema, que se encontraba en receso, Harvey M. Hutchison, y alegando que a pesar de haberse llamado la atención a la corte de distrito sobre su falta de jurisdicción a virtud de la apelación entablada dicha corte se había reservado la decisión del incidente expresándose y conduciéndose en tal forma que ellos y su abogado creían firmemente que era la intención de la corte condenar a Clark por el supuesto desacato, le pidieron que expidiera un auto inhibitorio dirigido a Rafael Arjona Siaca, Juez de la Corte de Distrito de Humacao, ordenándole que se abstuviera de seguir actuando bajo las disposiciones de sus dichas órdenes de agosto 30 y septiembre 14, hasta nuevo mandato, debiendo comparecer a exponer las razones que tuviere por las cuales no debía impedírsele definitivamente actuar, anulando y dejando sin efecto finalmente la repetida orden de septiembre 14, 1935.

En la solicitud de auto inhibitorio se transcribe íntegro el contrato celebrado entre los demandantes y el banco el 13 de octubre de 1934 por virtud del cual sostiene el banco que tiene derecho a retener el precio de los azúcares vendidos no obstante haberse anulado el embargo y desestimado la apelación que interpusiera contra la orden de nulidad, ya que el pleito en cuanto a lo fundamental que es su demanda de intervención sigue aún pendiente.

Una de las cláusulas de ese contrato, la séptima, lee como sigue:

"VII.—Dicha Eastern Sugar Corporation notificará por carta a las partes en este convenio, a sus respectivas direcciones postales, del recibo por ella de cada suma que reciba en pago de azúcares vendidos por ella a virtud de este convenio inmediatamente después de su recibo y las entregará así mismo a la SEGUNDA PARTE a medida que las vaya recibiendo; y a medida que dichas sumas sean recibidas por ésta, dicha SEGUNDA PARTE notificará por el mismo medio a cualquiera de dichos señores Fernández de la PRIMERA PARTE, con expre-

sión de la fecha y suma recibida; y dicha SEGUNDA PARTE guardará y conservará en depósito, en fideicomiso y en cuenta especial, las sumas así por ella recibidas. Las cantidades recibidas por la SEGUNDA PARTE, según y conforme se deja convenido, devengarán y dicha SEGUNDA PARTE le abonará y acreditará intereses al dos y medio por ciento (2½%) anual, calculados mensualmente sobre la base del balance mínimo mensual y las sumas así por ella recibidas, con sus intereses devengados, se aplicarán por la SEGUNDA PARTE según se estipula a continuación:

"1.—En el caso de que en la antes mencionada acción judicial se dictare sentencia final y firme resolviendo y fallando que la SEGUNDA PARTE tiene el gravamen que alega y reclama, total o parcialmente, la SEGUNDA PARTE tomará para sí y se cobrará la suma que, por dicha sentencia, tenga derecho a recibir, a virtud de su dicho alegado gravamen, de la suma total entonces en su poder, con los intereses devengados, conforme a este convenio, notificando de ello por escrito a cualquiera de dichos señores de la PRIMERA PARTE y si cobrada así tal suma por la SEGUNDA PARTE resultare algún saldo o diferencia en exceso de la suma que tuviere derecho a recibir dicha SEGUNDA PARTE, ésta pagará inmediatamente tal saldo o diferencia a la PRIMERA PARTE, con los intereses devengados, al tipo antes convenido.

"2.—Si por dicha sentencia se decidiere y fallare que la SEGUNDA PARTE no tiene el expresado alegado gravamen, entonces ésta pagará y entregará inmediatamente a la PRIMERA PARTE la suma total por ella recibida a virtud de este convenio, con los intereses devengados al tipo que se deja convenido."

Oyó el juez de turno a las partes interesadas quienes le presentaron además memorandums por escrito y el 3 de octubre de 1935 ordenó la expedición del auto solicitado en forma ordinaria.

Pidieron los demandantes en el pleito reconsideración y el juez de turno fijó el ocho del propio mes para oír de nuevo a las partes, en cuyo día los demandantes y los peticionarios presentaron *affidavits* para sostener sus respectivas posiciones y el juez de distrito solicitó por moción escrita la nulidad del auto.

El 16 de octubre el juez de turno decidió la cuestión suscitada como sigue:

"Vista la solicitud presentada en este caso en cuanto al juez de

distrito atañe, vista también la moción de reconsideración de libramiento de auto presentada por los demás demandados, oídas todas las partes interesadas, examinados los alegatos a la luz de la solicitud y de la moción del demandado juez de distrito 'solicitando la anulación del auto preliminar, así como oponiéndose al libramiento del auto definitivo solicitado por el demandante', atendidas las circunstancias especiales del caso, no ha lugar a dichas mociones y por la presente queda convertido en definitivo el auto ya expedido en forma ordinaria y dirigido al demandado juez de distrito de acuerdo con la resolución dictada el día 3 de los corrientes.''

Y fué entonces que los demandantes en el pleito original presentaron su moción de revisión por el Tribunal Supremo.

Alegan que el auto inhibitorio debe anularse en primer término porque la corte de distrito estaba actuando con plena jurisdicción en el incidente sobre desacato ya que la apelación interpuesta contra la orden desobedecida era ineficaz por ser inapelable dicha orden y en segundo y último término porque los peticionarios tenían remedios adecuados en ley en el caso de ser Clark condenado por desacato y porque apareciendo de la petición que cuando la misma fué radicada estaba pendiente de resolución el incidente de desacato, debió darse a dicha corte la oportunidad de resolver por sí misma si tenía jurisdicción para actuar.

En cuanto a la condición de inapelable de la orden de agosto 30, 1935, bastará referirnos a lo que acabamos de decidir en el recurso No. 7171. La orden era apelable y en tal virtud una vez apelada, cesó la juridicción de la Corte sentenciadora para ordenar su ejecución. Artículo 298 del Código de Enjuiciamiento Civil.

Y en cuanto a las otras cuestiones suscitadas, la jurisprudencia que les es aplicable se encuentra resumida en 22 R. C.L. 27, como sigue:

"Por regla general, no se expedirá un auto inhibitorio contra una corte inferior a menos que se haya llamado la atención de la corte cuyos procedimientos se tratan de anular a la alegada falta o exceso de jurisdicción, siendo el fundamento de esta regla el respeto y la consideración debidos a la corte inferior y la conveniencia de

prevenir litigios innecesarios. Este requisito es establecido por regla de la corte en algunas jurisdicciones. La objeción en la corte inferior no puede decirse que sea jurisdiccional, y la corte superior puede y procederá sin tal objeción en casos determinados. La regla es una de discreción solamente, y no es en ningún sentido rígida o arbitraria. De ahí que ninguna objeción en la corte inferior necesariamente tiene que ser presentada cuando el procedimiento es ex parte, y no hubo oportunidad de oponerse; donde al peticionario no se le permitió por fraude o ardid objetar, cuando la falta de jurisdicción es aparente de la faz de los procedimientos; donde la intención de la corte inferior de actuar sin jurisdicción se hace evidente en alguna forma y es obvio de los procedimientos en su totalidad que tal solicitud resultaría inútil; o donde la dilación necesaria sería altamente perjudicial a los intereses del peticionario. La cuestión de cortesía judicial debe ceder a los derechos personales substanciales de los litigantes, como por ejemplo el sacrificar sus libertades.''

Los casos que sostienen el texto han sido examinados y juzgados los hechos de éste que estamos considerando y las circunstancias que en el mismo concurren a la luz de la jurisprudencia establecida en los mismos, creemos que actuó derechamente el juez de turno al expedir el auto, al negarse a reconsiderar su resolución y al convertir en definitivo el auto ya expedido.

Si bien es cierto que la cuestión de jurisdicción se planteó ante la corte de distrito y que en tal caso lo natural era esperar que ella misma la resolviera, como surge de la petición y aún con mayor claridad y fuerza del *affidavit* del abogado de los peticionarios de 8 de octubre de 1935 en contestación al del abogado de los demandantes en el pleito original de igual fecha y de la propia moción del juez de distrito pidiendo la nulidad del auto preliminar expedido, que la corte tenía la intención de condenar al peticionario Clark por desacato a prisión, estando así envuelta una cuestión de libertad personal la intervención de la corte superior, que era discrecional, estuvo justificada. Constituye la línea recta, la más corta para llegar al fondo de la cuestión y resolverla en definitiva.

*Por virtud de todo lo expuesto debe declararse no haber*

*lugar a la revisión solicitada y confirmarse las órdenes recurridas que dictó el juez de turno el 3 y el 16 de octubre de 1935.*

Los Jueces Asociados Señores Hutchison y Córdova Dávila, no intervinieron.