JOSÉ CHARANA, demandante y recurrido, *v.* EL PUEBLO DE PUERTO RICO, ETC., ET AL., demandados y recurrentes.

*Número:* O-79-62 *Resuelto:* 18 de abril de 1980

*Héctor A. Colón Cruz, Procurador General,* y *Rose Mary Corchado Lorent, Procuradora General Auxiliar,* abogados de El Pueblo; *Ferrer & Alcalá,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Contra el señor José Charana se presentó denuncia ante el Tribunal de Distrito, Sala de Mayagüez, imputándosele haber infringido el Art. 158 del Código Penal, 33 L.P.R.A. sec. 4241, porque siendo el padre del menor que allí se menciona no ha cumplido su obligación de proveerle alimentos a pesar de haber sido requerido para ello. Tras hacer alegación de no culpable y negar la paternidad, el señor Charana presentó demanda ante el Tribunal Superior, Sala de Mayagüez, en solicitud de sentencia declaratoria de que no es el padre del niño y solicitó auto inhibitorio contra la mencionada Sala de Distrito para paralizar los procedimientos en el caso por incumplimiento de la obligación alimenticia y trasladar dicho caso al Superior para ser consolidado con la acción sobre sentencia declaratoria. El Tribunal Superior expidió el auto inhibitorio en los términos propuestos. Contra ello ha recurrido el Procurador General.

Resolvemos (¹) que, consideradas la naturaleza de dicho recurso y la naturaleza de la acción cuya consolidación se dispuso mediante el mismo, incidió el tribunal de instancia. Elaboraremos a continuación nuestro criterio.

## I

El auto inhibitorio, conocido en las jurisdicciones norteamericanas como *writ of prohibition* y *writ of restraint*, proyecta sus orígenes hasta los tiempos de Guillermo el Conquistador en el antiguo Derecho Común inglés, en el temprano conflicto entre Iglesia y Estado. Se utilizó por los tribunales de la Corona para impedir que los tribunales eclesiásticos actuasen sobre asuntos que aquellos consideraban ser de su exclusiva incumbencia. (²) Su nombre en español parece provenir de la llamada "inhibitoria" que se reconocía en la Ley de Enjuiciamiento Civil para España y Ultramar de 1881 y en la Ley de Enjuiciamiento Civil reformada para las islas de Cuba y Puerto Rico promulgada en 1885 y vigente al ocurrir el cambio de soberanía. Ambas leyes instituían dos medidas para promover "cuestiones de competencia" de los tribunales: "la declinatoria", que se instaba ante el tribunal en que pendía la acción, y "la inhibitoria", que se presentaba "ante el Juez o Tribunal a quien se considere competente, pidiéndole que dirija oficio al que se estime no serlo, para que se inhiba y remita los autos". Art. 72 de las citadas leyes de 1881 y 1885. Aunque hay alguna similitud entre el auto inhibitorio y la mencionada acción inhibitoria, dicho auto se instituyó aquí por Ley de 10 de marzo de 1904 como era conocido en las jurisdicciones del *Common Law*, particularmente el estado de California. Vino

---

(¹) Concedimos término al recurrido para comparecer a oponerse al recurso ante nos y éste oportunamente así lo hizo. En uso de la facultad que nos confiere la Regla 50 de nuestro Reglamento prescindimos de más trámites y damos por sometido el recurso, que ahora resolvemos.

(²) Para una interesante exégesis histórica, véase la monografía de Harold W. Wolfram, *The "Ancient and Just" Writ of Prohibition in New York*, LII Colum. L. Rev. 334 (1952).

a formar parte del Código de Enjuiciamiento Civil al hacerse la recopilación de las leyes procesales en 1933, figurando regulado en los Arts. 664 a 667 de dicho Código, 32 L.P.R.A. secs. 3461 a 3464 respectivamente. ([3]) Se le define en el Art. 664, 32 L.P.R.A. sec. 3461, de la siguiente manera:

"Auto inhibitorio es un auto expedido por un Tribunal Superior [*sic*] dirigido al juez y a la parte de un pleito entablado en un tribunal inferior, en el que se les ordena la paralización de todo procedimiento del mismo significándoles que la causa original o algún incidente surgido en dicho pleito no es de su competencia sino de la de otro tribunal; o cuando al ejercer funciones de su competencia el tribunal inferior anulare un derecho legal, o para impedir que un juez conceda una nueva vista, una vez vencido el término señalado para la celebración del juicio." ([4])

Es curioso que, aunque los textos del Código de Enjuiciamiento Civil y la anotación que sigue al trascrito Art. 664 en L.P.R.A., señalan el Art. 1102 del Código de Procedimiento Civil de California como el de su procedencia, la redacción de dicho Art. 1102 era en 1904 y continúa siendo muy distinta a la aquí adoptada mediante la Ley de 13 de marzo de ese año, el hoy Art. 664 de nuestro Código. Decía el Art. 1102 del Código californiano en 1904:

"The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person." 18 West's Annotated California Codes, Code of Civil Procedure, sec. 1102, y su anotación.

Este artículo fue adoptado en 1872 y así disponía luego de ser enmendado en 1881. 18 West, *op. cit.*, *Historical Note.*

([3]) Dichos artículos fueron expresamente dejados en vigor tanto por las Reglas de Procedimiento Civil de 1958 como por las de 1979. Véase la Regla 72 de ambos textos.

([4]) El uso indebido de mayúsculas al decir que es un auto expedido "por un Tribunal Superior" se presta a confusión, pero ello queda aclarado en el artículo siguiente, el 665, 32 L.P.R.A. sec. 3462, que dice: "El Tribunal Supremo y el Tribunal Superior quedan por la presente autorizados y con facultad para expedir autos inhibitorios."

■ La frase *"or ministerial"* fue eliminada jurisprudencialmente desde el 1878, *Mauver* v. *Mitchell*, 53 Cal. 289 (1878); 18 West, *op. cit.*, sec. 1102, nota 3. En 1919 fue eliminada legislativamente por enmienda de ese año. 18 West, *op. cit.*, *Historical Note*. Por enmienda del 1955, 18 West, *op. cit.*, suplemento, se eliminó la primera oración que establece que el auto es la contraparte del auto de *mandamus*. Véanse *Travelers Ins. Co.* v. *Superior Court*, 135 Cal. Rptr. 579, 65 Cal. App. 3d 751 (1977); *Castaneda* v. *Municipal Court*, 102 Cal. Rptr. 230, 25 Cal. App. 3d 588 (1972); *Duke* v. *Justice's Court of City of Berkeley*, 108 P.2d 707, 42 Cal. App. 2d 178 (1941); *Ames* v. *Superior Court*, 82 P.2d 948, 28 Cal. App. 2d 502 (1938). De esta suerte ha quedado limitado el auto inhibitorio en California a procedimientos ante un tribunal, corporación, junta o persona que ejerza funciones judiciales si tales procedimientos exceden su jurisdicción o no se tiene jurisdicción sobre ellos. Así, se ha conformado a la tradicional definición del *Common Law*, que es la de nuestro Art. 664, excepto que en éste se añadieron como causas para la expedición del auto la llamada anulación de un derecho legal y la concesión de nueva vista una vez vencido el término señalado para la celebración del juicio. California aún conserva que el auto pueda dirigirse, además de a un tribunal inferior, a una corporación, junta o persona. El auto inhibitorio como se concibe en nuestro Código es de naturaleza estrictamente judicial. Procede solamente por un tribunal superior contra un juez y la parte de un pleito entablado en un tribunal inferior.

■ Es el auto inhibitorio, además, por su naturaleza, un procedimiento auxiliar o accesorio, es decir, incidental con respecto a un pleito o procedimiento principal. Va dirigido, como señala el citado Art. 664, al juez y a la parte "de un pleito entablado en un tribunal inferior". Véase Toledo Álamo, *Autos Inhibitorios en Puerto Rico*, 15 Rev. Jur. U.P.R. 245, 246–248 (1945–46).

■ En su aplicación, el auto inhibitorio es preventivo,

a diferencia del *certiorari*. Procede para impedir la comisión de un acto futuro y no para revisar o corregir determinada actuación de un tribunal inferior. *Jiménez* v. *Corte*, 59 D.P.R. 29, 33 (1941). [5] Es, como los demás remedios legales extraordinarios, de naturaleza privilegiada, y procede solamente cuando no exista un procedimiento legal ordinario que sea rápido, adecuado y eficaz. Art. 666 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3463; *National City Bank* v. *Arjona*, 49 D.P.R. 355 (1936); *Arroyo Rivera* v. *Corte*, 38 D.P.R. 10 (1928). Dijimos en *Fortuna Estates* v. *Texidor*, 26 D.P.R. 266, 268 (1918): "El auto inhibitorio es un auto privilegiado que debe usarse con gran cautela y a los efectos de impedir la interrupción y en apoyo de la justicia, y para asegurar el orden y la seguridad en todos los tribunales, cuando no exista otro remedio ordinario. Su esfera de acción y sus propósitos son los de hacer que los tribunales actúen dentro de los límites de su jurisdicción e impedir que usurpen la jurisdicción de otras cortes." Véase, al mismo efecto, *Jiménez* v. *Corte*, supra, págs. 32–33; y véanse Toledo Álamo, *supra*, pág. 245, y la excelente monografía de William H. Boone, *Prohibition: Use of the Writ of Restraint in California*, 15 Hastings L.J. 161 (1963–64).

■ Veamos las tres situaciones en que procede el auto inhibitorio con arreglo al citado y antes transcrito Art. 664: (1) que la causa original o algún incidente surgido en el pleito ante el tribunal inferior no es de su "competencia" sino de la de otro tribunal; (2) cuando al ejercer funciones de su "competencia" el tribunal inferior anulare un derecho legal; y, (3) para impedir que un juez conceda una nueva vista, una vez vencido el término señalado para la celebración del juicio.

---

[5] El caso de *Porto Rican Express Co.* v. *Igartúa, Juez Mpal.*, 38 D.P.R. 983 (1928), en cuanto resolvió que procedía un auto inhibitorio para revisar una resolución que denegó una moción de traslado, debe considerarse revocado. El remedio adecuado hubiese sido el *certiorari* pues se trataba de revisar la actuación de la antigua Corte Municipal denegando el traslado de una acción en cobro de dinero, de naturaleza personal, en que la parte demandada tenía su domicilio y lugar de negocios en otro municipio.

■ En cuanto a la primera—falta de "competencia"— valga señalar que el término "competencia" se refiere a la autoridad del tribunal para entender en el *asunto* objeto de controversia, es decir, a lo que comúnmente se denomina *jurisdicción*. Así se ha reconocido siempre en el *Common Law*, desde el origen del auto inhibitorio. Wolfram, monografía citada *supra*, escolio (2). Así se ha entendido en California. Véase la jurisprudencia citada al analizar el alcance del Art. 1102 del Código de Procedimiento Civil de dicho estado, y la monografía de Boone a que nos referimos dos párrafos más arriba. Y así lo hemos entendido en nuestra jurisdicción. *Asamblea Municipal* v. *Corte*, 62 D.P.R. 772 (1944); *Jiménez* v. *Corte*, supra, pág. 33; *Arroyo Rivera* v. *Corte*, supra. Véase, asimismo, el citado trabajo del profesor Toledo Álamo, *supra*, págs. 248–254.

El uso del término "competencia" al redactarse la Sec. 1 de la Ley de 13 de marzo de 1904, hoy Art. 664 de nuestro Código de Enjuiciamiento Civil, parece derivarse de las leyes de enjuiciamiento civil que regían aquí desde el 1881 y que estaban vigentes al firmarse el Tratado de París en 1899. Ambas leyes usaban el término "competencia", aplicado a la autoridad o jurisdicción del tribunal sobre las partes litigantes. Así se desprende del Art. 75 de las dos leyes—la de 1881 y la de 1885—que disponía: "No podrá proponer la inhibitoria ni la declinatoria el litigante que se hubiese sometido expresa o tácitamente al Juez o Tribunal que conozca del asunto." Dicho de otro modo, era la parte sobre la cual el tribunal no había adquirido competencia la que podía promover la inhibitoria, independientemente de que el tribunal tuviera jurisdicción. A esta misma conclusión llegó el profesor Toledo Álamo, *supra*, pág. 250.

■ El segundo aspecto—cuando teniendo jurisdicción el tribunal éste anulare un derecho legal—ha sido muy pocas veces invocado y no hemos hallado caso alguno en que este Tribunal haya concedido el recurso fundado expresamente en dicha causal. Implícitamente fue aplicada esta causal en

*P.R. Railway, Light & Power Co.* v. *Ortiz, Juez,* 59 D.P.R. 921, 945 (1942), al concederse el auto inhibitorio por este Tribunal para negar la entrega de una propiedad expropiada sin haberse consignado el precio. Aun así, expresamos que "carece la corte de jurisdicción para dictar la orden de entrega". Ciertamente, esta segunda causal no ha sido favorecida. Señaló este Tribunal en *Jiménez* v. *Corte,* supra, pág. 32, citando a *Fortuna Estates* v. *Texidor,* supra:

"De acuerdo, pues, con el espíritu de la jurisprudencia y con el origen e historia de la ley, al interpretarse el estatuto portorriqueño [*sic*] en la parte que dice que procede el auto *'cuando al ejercer funciones de su competencia el tribunal inferior anulare un derecho legal,' tal derecho legal debe ser de verdadera importancia y su anulación manifiesta. De otro modo como en cualquiera resolución incidental errónea dictada en cualquier pleito va envuelta la anulación de un derecho legal, podría recurrirse al auto inhibitorio en todos dichos casos, con lo cual en vez de promoverse se obstaculizaría la buena administración de la justicia.* A este respecto deseamos consignar también que según el peso de las autoridades, la expedición del auto inhibitorio, con contadas excepciones, descansa en la sana discreción de la corte." (Énfasis en el original.)

En cuanto a la tercera causal para la expedición de un auto inhibitorio—impedir la concesión de una vista, una vez vencido el término señalado para la celebración del juicio—este Tribunal no ha tenido ocasión de expresarse. No hemos hallado caso alguno en nuestra jurisprudencia en que haya sido invocada. Al igual que la segunda causal, parece ser la tendencia a limitar la expedición del auto inhibitorio a casos en que un tribunal intente actuar sobre un asunto careciendo de jurisdicción para ello. Esa ha sido siempre desde su origen y en esencia la base del auto inhibitorio.

## II

Considerada la naturaleza del auto inhibitorio y el marco delimitador que tiene en su función de remedio legal extraordinario, examinemos su aplicabilidad o proceden-

cia en el caso ante nuestra consideración. Será menester, además, que consideremos la naturaleza de las dos acciones aquí presentes, a saber, la acción bajo el Art. 158 del Código Penal y la acción sobre sentencia declaratoria dirigida a que se establezca la no paternidad.

El Art. 158 del Código Penal vigente, 33 L.P.R.A. sec. 4241, (6) establece el delito tipificado como "incumplimiento de la obligación alimenticia" que, bajo el Código Penal anterior figuraba en su Art. 263, 33 L.P.R.A. sec. 991, con el nombre de "abandono y descuido de menores". (7) Dispone el inciso (f) del actual Código:

"(f) A los efectos de determinar la paternidad, el Tribunal de Distrito tiene jurisdicción concurrente con el Tribunal Superior de Puerto Rico."

 Bajo nuestro sistema judicial unificado el Tribunal de Primera Instancia funciona en dos secciones, Tribunal Superior y Tribunal de Distrito. 4 L.P.R.A. secs. 1 y 61. El hecho de que se disponga en el transcrito inciso que ambas secciones tienen jurisdicción concurrente a los fines de determinar la paternidad no implica que la controversia sobre paternidad de un menor pueda estarse juzgando a un mismo tiempo en el Tribunal Superior y en el Tribunal de Distrito, o en dos salas distintas del primero o del segundo. A ese efecto, salvo cuando proceda un traslado de una sala a otra por razón de la competencia sobre los litigantes o por alguna otra razón en que se ha reconocido el derecho al traslado, debe retener el caso aquel tribunal que primeramente haya ejercido jurisdicción. Debe ser así por deferencia a dicho tribunal y porque, como señalamos en *Diez Rodríguez* v. *Guzmán Ruiz*, 108 D.P.R. 371 (1979):

---

(6) Por ser bastante extenso y en ánimo de economía de espacio omitimos transcribirlo aquí.

(7) Salvo el cambio de nombre y la disposición al final del inciso (e) del Art. 158 del Código de 1974, de que durante el trámite apelativo se celebre una vista si el acusado dejare de consignar la pensión alimenticia impuesta, a los fines de determinar si debe desestimarse el recurso, el Art. 263 del Código anterior era idéntico al 158 del actual.

"Un litigante que acude con antelación en tiempo a pedir remedio debe ser protegido en su derecho a proseguir el procedimiento iniciado en ausencia de opresión o abuso de derecho."

Es principio generalmente reconocido que cuando dos o más tribunales tienen jurisdicción concurrente sobre un asunto, aquél que primeramente la asume la conserva con exclusión de cualquier otro tribunal en que la acción pueda haber sido iniciada. *Cf. Colón* v. *Tribunal Superior*, 97 D.P.R. 106, 122 (1969). Esta norma ha sido particularmente aplicada para señalar que el auto inhibitorio no procede para privar de jurisdicción al tribunal que ya la ha asumido. *Loftis* v. *Superior Court*, 205 Cal. App. 2d 148 (1962); *Greene* v. *Superior Court*, 37 Cal. 2d 307, 310, 231 P.2d 821 (1951); *Simmons* v. *Superior Court of Los Angeles County*, 96 Cal. App. 2d 119, 214 P.2d 844. En el caso ante nuestra consideración, cuando se instó por el señor Charana la demanda sobre sentencia declaratoria ante el Tribunal Superior, ya se había presentado denuncia en su contra en el Tribunal de Distrito, se le había citado, había comparecido y había hecho alegación de no culpable y negado la paternidad. El caso estaba listo para señalamiento.

No podemos aceptar y mucho menos alentar la práctica de aprovechar la concurrencia de jurisdicciones para establecer dualidad de procedimientos en instancia sobre una misma controversia. Esta práctica es más inaceptable si con ella se pretende lograr alguna ventaja y al mismo tiempo derrotar una acción sumaria y de carácter especial como la que establece el Art. 158 del Código Penal, cuyo propósito es disponer un remedio rápido para que un menor de edad pueda obligar a su padre a proveerle el necesario y adecuado sustento.

Nuestra decisión en *Diez Rodríguez* v. *Guzmán Ruiz*, supra, no es óbice para lo que aquí expresamos, como tampoco para limitar el alcance de *Pol Sella* v. *Lugo Christian*,

107 D.P.R. 540 (1978). La cuestión planteada en *Diez Rodríguez* se inició a la inversa de la aquí presente. Allí se instó acción sobre sentencia declaratoria de no paternidad en el Tribunal Superior, se emplazó al menor demandado y a su madre y éstos, antes de alegar, recurrieron al Tribunal de Distrito mediante denuncia por abandono de menores bajo el Art. 263 del Código Penal entonces vigente, esencialmente igual al 158 del actual Código. No se paralizó ninguna de las acciones. (⁸) Ambas continuaron su curso, culminando la del Tribunal de Distrito en la adjudicación de que el acusado era el padre del menor y en su condena por abandono de menores, y posteriormente culminando la acción que pendía en el Superior en sentencia que declaró que el menor no es hijo de dicha persona. Los dos procedimientos culminaron en sentencias finales irreconciliables entre sí. Resolvimos, y en ello nos ratificamos, que la del Distrito no podía prevalecer.

La paternidad reconocida por el fallo del Tribunal de Distrito quedó desmentida por pruebas científicas que excluyeron la posibilidad de que el alegado padre lo fuera. La verdad jurídica no deberá subsistir si se prueba que es contraria a la certeza científica. Los procesos judiciales no pueden servir para que lo que no es cierto se eternice. Ello es particularmente así en casos como el que está ante nuestra consideración. No puede ignorarse que la determinación de la paternidad es cuestión revestida de un gran interés público. Véanse *Pérez* v. *Bauzá*, 83 D.P.R. 220, 226 (1961); *Garzot* v. *Tribunal Superior*, 90 D.P.R. 359, 365 (1964); y *Burgos Orellano* v. *Tribunal Superior*, 101 D.P.R. 647, 650 (1973).

---

(⁸) Desde el punto de vista procesal, el auto inhibitorio hubiese sido un remedio adecuado para paralizar la acción ante el Tribunal de Distrito toda vez que ya el Superior había asumido jurisdicción sobre la controversia de paternidad, hecho que tenía que adjudicarse antes de resolver sobre el derecho a alimentos y la posible condena por incumplimiento de la obligación alimenticia. Como señalamos en *Diez Rodríguez*, ". . . la demanda civil tomó precedencia en tiempo, y el menor debidamente emplazado y con defensor *ad litem* designado, no podía 'crearse' una defensa sobre la marcha por el simple expediente de lograr que en su nombre se promoviera el caso criminal."

■ Es de rigor reconocer que de conformidad con la Ley de Sentencias Declaratorias (⁹) el hecho de que se haya instado la acción penal por incumplimiento de la obligación alimenticia ante el Tribunal de Distrito no priva automáticamente al Tribunal Superior de facultad para conocer del asunto. Dicha ley dispone que ". . . el Tribunal Superior tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio." 32 L.P.R.A. sec. 2991. Dijimos en *Moscoso* v. *Rivera,* 76 D.P.R. 481, 483 (1954):

"Bajo nuestra Ley de Sentencias Declaratorias, aprobada el 25 de abril de 1931 (pág. 379), nuestros tribunales tienen la autoridad para dictar sentencias declaratorias en cuanto al estado (*status*) de las personas y en cuanto a las relaciones jurídicas entre ellas."

■ Sin embargo, el ejercicio de esa facultad no es ilimitado y conlleva el uso de una balanceada discreción del Tribunal "dentro de ciertas fronteras, contornos y postulados jurídicos". *Moscoso,* supra, pág. 493. Ello es así, porque el objetivo o fin de la referida ley es proveer al ciudadano un mecanismo procesal de carácter remedial o profiláctico mediante el cual pueda anticiparse a dilucidar ante los tribunales los méritos de cualquier reclamación que en forma latente entrañe un peligro potencial en su contra. Expresamos en *Moscoso,* supra, págs. 488–489:

" 'La importancia del poder de demandar de parte de un poseedor de derechos que vea que esos derechos están sujetos a disputas o a un peligro potencial, consiste en que se puede obtener la protección judicial antes que el peligro haya madurado hasta convertirse en una catástrofe y antes que la otra parte inicie un litigio para hacer efectivas sus reclamaciones . . . . La seguridad y la certidumbre en las relaciones jurídicas es una cuestión de tanto interés público como de interés privado. . . .'

Efectivamente, el propósito de la ley, de pacificación y de eliminación de la inseguridad y la incertidumbre (sección 12), puede ser logrado mediante una declaración negativa de inexis-

_____

(⁹) Ley Núm. 47 de 25 de abril de 1931, 32 L.P.R.A. sec. 2991 a 3006, incorporada a la Regla 59 de las vigentes Reglas de Procedimiento Civil, 1979.

tencia de derechos, a instancias de un demandante que crea en forma legítima que sus intereses están sometidos al peligro de una posible reclamación judicial de otra persona. En ese caso, el demandante puede anticipar la actuación del demandado, y plantear él mismo la controversia. . . .

. . . Se trata de un estatuto creador de nuevos remedios, que amplía los viejos remedios tradicionales y, con el propósito de disipar incertidumbres, y contribuir al logro de la paz social, *concede la oportunidad de anticipar el ejercicio futuro de determinadas causas de acción mediante una declaración previa de derechos. Se trata precisamente de un remedio anterior al ejercicio efectivo de una causa de acción convencional.*" Moscoso, *supra*, págs. 488–489. (Énfasis nuestro.)

Aquí, como hemos visto, la demanda sobre sentencia declaratoria se instó cuando ya existía una reclamación de paternidad ante un tribunal con jurisdicción sobre el asunto y sobre las personas de los litigantes. El auto inhibitorio no podía utilizarse para privarlo de una facultad que en derecho tenía y que ya había asumido.

En cuanto a la segunda causal para la expedición de un auto inhibitorio, no hallamos que la intervención del Tribunal de Distrito en la acción por incumplimiento de la obligación alimenticia pudiera anular derecho legal alguno del señor Charana. Por el contrario, la acción criminal bajo el Art. 158 le daba la ventaja ante el Tribunal de Distrito de que podía cruzarse de brazos, ampararse en su derecho a no incriminarse y no declarar si así lo prefería, descansar en la presunción de inocencia, y exigir que su paternidad y culpabilidad se probaran más allá de duda razonable. El *quantum* de prueba requerido en la acción ante el Tribunal de Distrito sería necesariamente mayor, por tratarse de un caso criminal, que el requerido bajo la norma de preponderancia de prueba en la acción de filiación que pudiera ser ejercitada en interés del menor. Véase *Pol Sella* v. *Lugo Christian*, supra, y el más reciente caso de *Román* v. *Fattah*, 109 D.P.R. 493 (1980).

[15] El Art. 158 del Código Penal persigue el propósito de proveer un procedimiento sumario rápido y sencillo para

obligar al padre de un menor a proveerle su sustento. Establece términos breves. Su inciso (c) dispone "un plazo de no más de diez (10) días al acusado para que conteste la alegación al efecto" y que el juicio se celebre "inmediatamente", limitándose a cinco días el término dentro del cual el juez deberá resolver sobre la paternidad, una vez celebrado el juicio; el inciso (d) señala que si se apela, el caso "tendrá preferencia en los calendarios de los tribunales de apelación"; y el inciso (e) dispone que la apelación "no suspenderá los efectos de la resolución ordenando el pago de alimentos". Es evidente el propósito del legislador de aliviar sin demora y mediante un procedimiento sencillo la angustia que a un niño, a su madre o persona que lo tenga bajo su custodia, y a la sociedad misma produce el desamparo y la falta de recursos para sostenerle. No puede dejarse al arbitrio de quien se señale como padre que frustre y destruya ese propósito.

Permitir que mediante el auto inhibitorio se convierta en ordinario el procedimiento ya iniciado daría al traste con ese propósito legislativo. Por iniciativa del acusado que niegue la paternidad, al conseguir la paralización de los procedimientos ante el Tribunal de Distrito, se frustraría y podría resultar inefectiva la esperanza de que pueda probarse en un procedimiento rápido y sencillo la paternidad, con todas las garantías de un juicio criminal, y recibir el hijo el sustento a que tenga derecho. El trámite rápido y efectivo ante el Tribunal de Distrito quedaría rezagado en los complejos procesos civiles contenciosos—no pocas veces lentos y tardíos—en el Tribunal Superior, agravando la precaria situación de los menores cuya paternidad y derecho a alimentos les es negada por sus padres.

Aparte de que no se ha establecido en este caso la anulación o posible anulación de un derecho legal, hemos visto que esta causal no ha sido favorecida y que para que proceda debe aparecer que tal derecho es "de verdadera importancia y su anulación manifiesta", y que el empleo del auto inhibitorio debe promover y no obstaculizar la buena

administración de la justicia. *Fortuna Estates*, supra, pág. 269. La buena administración de la justicia se obstaculizaría, en detrimento del propósito del Art. 158 citado, si una vez iniciado el procedimiento conforme a dicho artículo se permitiese que fuese potestativo del acusado paralizarlo para escoger el foro que crea ser de su mejor conveniencia.

*Se expedirá el auto y se dictará sentencia que anule el auto inhibitorio expedido por el Tribunal Superior, Sala de Mayagüez, desestime la demanda allí instada, y disponga que el caso iniciado bajo el Art. 158 del Código Penal continúe su trámite ante el Tribunal de Distrito en que se originó.*

El Juez Asociado Señor Torres Rigual no intervino.