Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| MARIMAR HOME PROPERTY LLC<br><br>*Apelante*<br><br>v.<br><br>BRISAS DE MAR CHIQUITA HOMEOWNERS CORP.<br><br>*Apelado* | KLAN202400704 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Manatí<br><br>Caso Núm.: MT2022CV00930<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 24 de septiembre de 2024.

Comparece Marimar Home Property LLC (Marimar o parte apelante), mediante recurso de Apelación y nos solicita que revoquemos la *Sentencia*[1] emitida el 25 de junio de 2024, notificada el 2 de julio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Manatí (TPI o foro primario). En la referida sentencia, el TPI declaró No Ha Lugar la *Demanda* incoada por Marimar.

Por los fundamentos que exponemos a continuación, **confirmamos** la *Sentencia* apelada.

### I.

Surge del legajo apelativo y del expediente electrónico que, el 20 de diciembre de 2022, la parte apelante instó *Demanda en Solicitud de Sentencia Declaratoria*[2] contra Brisas de Mar Chiquita Homeowners Corp. (parte apelada o Asociación), porque alegadamente no existía controversia de hecho y solo restaba que el TPI aplicara el derecho, basado en la ley y los contratos. En síntesis,

---

[1] Véase Anejo 1 de la Apelación.
[2] Véase Anejo 2 de la Apelación.

adujo que Marimar adquirió mediante subasta pública la propiedad inmueble que ubica en la Urbanización Brisas de Mar Chiquita (urbanización). Alegó que el 23 de agosto de 2022, la parte apelada le notificó un "Certificado de Deuda[3]" e informó que el balance adeudado del titular, por concepto de cuotas de mantenimiento, era la suma de $19,290.44. Seguidamente, el 27 de septiembre de 2022, la parte apelada le notificó una carta de cobro[4] por la cantidad de $19,633.99. Esbozó que, el 12 de octubre de 2022, el Municipio de Manatí (municipio) emitió una Certificación donde informaba que no existía autorización del municipio para control de acceso en la urbanización. Cónsono con lo anterior, el 17 de octubre de 2022, Marimar remitió una carta a la Asociación y le indicó que el control de acceso en la urbanización era uno ilegal, por no cumplir con los requerimientos legales de control de acceso. Así pues, solicitó la liberación de la deuda en sus libros y una certificación que reflejara dicha liberación. El 8 de noviembre de 2022, la parte apelada reiteró el cobro.

Así las cosas, Marimar, acudió ante el TPI y solicitó que se declarara nula la reclamación de las cuotas de mantenimiento, se removiese el control de acceso, se concediera el pago de honorarios de abogado y costas y, en la alternativa de proceder el pago de cuotas, se aplicara una reducción monetaria a $9,738.00.

El 9 de marzo de 2023, la parte apelada presentó su *Contestación a la Demanda*[5] en la que aceptó y negó los hechos. Además, arguyó las siguientes defensas: que existía una obligación de pagar cuotas de mantenimiento para la urbanización, esto emanaba de la Escritura número 15 del 8 de noviembre de 2005 sobre *Constitución de Servidumbre en Equidad, Declaración de*

---

[3] *Íd.*
[4] *Íd.*
[5] Véase Anejo 3 de la Apelación.

*Derechos y Constitución de Condiciones Restrictivas para la Urbanización Brisas de Mar Chiquita*; que el pago de la totalidad de las cuotas adeudadas por el anterior propietario está regulado por el Código Municipal; y, que Marimar se convirtió en un adquirente voluntario.

Tras varios trámites procesales, los cuales no son necesarios pormenorizar, el 19 de julio de 2023, el municipio compareció[6] ante el foro primario como amigo de la corte. Argumentó que Marimar ha construido sobre la certificación expedida por el municipio, una teoría legal incorrecta, esto, en torno a que la constitución del control de acceso en la urbanización era ilegal. Resumió la Ordenanza Núm. 18, PON 1(3) Serie 1988-89, sobre "*Para Establecer los Requisitos para la Autorización de Barreras de Control de Tránsito de Vehículos de Motor y Uso Público de Calles en Urbanizaciones y Comunidades Residenciales en la Ciudad de Manatí*" (Ordenanza Núm. 18). En síntesis, esta ordenanza disponía los requisitos necesarios para autorizar la instalación de barreras de control de tránsito de vehículos de motor y uso público en calles municipales a tenor con el Reglamento Núm. 20 de la Junta de Planificación y la Orden Ejecutiva Núm. 52600 del Gobernador de Puerto Rico del 5 de enero de 1989. Esta Ordenanza Núm. 18 era la vigente al momento de los hechos y no ha sido derogada. Con relación a dicha ordenanza, esta no requería la emisión de una ordenanza o resolución por parte del municipio para la autorización de una solicitud de control de acceso. La urbanización fue creada por el desarrollador Brisas de Mar Chiquita Corp., para el año 2005. Como tal, el desarrollador otorgó las Escrituras Núm. 14 y 15 del 8 de noviembre de 2005 ante el notario Jorge A. Pierluisi Urrutia para que quedaran constituidas las servidumbres en equidad y

---

[6] Véase Anejo 8 de la Apelación.

constitución de condiciones restrictivas para la urbanización, finca 17702 de Manatí. A la Escritura Núm. 14, *supra*, se le anejó como documento fijado a la escritura matriz, el endoso del municipio con fecha del 27 de septiembre de 2005.

El 13 de marzo de 1989, se aprobó la Ordenanza 18 y el municipio extendió el endoso favorable al proyecto de referencia. Lo solicitado, "Control de Acceso", era parte de la construcción de la urbanización, por lo que no tenía la necesidad de ser radicado a la Legislatura Municipal. El 15 de noviembre de 2005, se presentó al asiento 156 del diario 292 del Registro de la Propiedad, Sección de Manatí, la Escritura Núm. 14, *supra*, y se gravó la finca 17702 de Manatí con la condición restrictiva de control de acceso y sus documentos complementarios, fue calificado por la Hon. Carmen E. Ávila Vargas, Registradora de la Propiedad. La condición restrictiva fue inscrita el 13 de marzo de 2006. Así consta en la inscripción 8ª al reverso del folio 98 del tomo 557 de Manatí y del folio 97 del tomo 581 de Manatí, finca 17702, folios obtenidos a través del sistema KARIBE del Registro de la Propiedad.

Por otra parte, el municipio concluyó que, la parte apelante erróneamente argumentó sobre la certificación emitida por el secretario de la Legislatura Municipal del municipio. Además, razonó que, la Ordenanza Núm. 18 no aplica cuando el promovente es un desarrollador o urbanista, ya que lo exime del requisito de celebración de vistas públicas ante el municipio. Es decir, la Ordenanza Núm. 18 aplica en las situaciones de urbanizaciones previamente construidas que desean sujetar su complejo a la Ley de Control de Acceso[7]. Por lo cual el endoso del municipio claramente estableció que la solicitud no fue remitida a la Legislatura Municipal por no ser necesario.

---

[7] Véase Anejo 8 de la Apelación.

El 31 de octubre de 2023, el TPI celebró vista argumentativa[8] y el 25 de junio de 2024, dictó la *Sentencia* aquí impugnada, en la cual se determinó que lo solicitado por Marimar *no procede, pues, ésta es un adquiriente voluntario, que por una decisión enteramente discrecional optó por adquirir una propiedad en la Urbanización Brisas de Mar Chiquita, propiedad que se encuentra afecta a una servidumbre en equidad y control de acceso, la cual requiere una contribución económica periódica para el mantenimiento de las dos antes mencionadas condiciones. Ante la realidad de que la información sobre los gravámenes es pública, pues se encuentran inscritos en el Registro de la Propiedad, no puede alegar la parte demandante, el desconocimiento de dichos gravámenes*[9].

Inconforme, el 29 de julio de 2024, la parte apelante acudió ante nos mediante recurso de *Apelación* y le imputó al TPI la comisión de los siguientes errores:

> El TPI Erró al determinar que a la fecha de la inscripción en el Registro de la Propiedad no era necesaria la aprobación de la Asamblea Municipal en la autorización del control de acceso comunitario y que es suficiente la autorización de la Vice-Alcaldesa.

> El TPI Erró al determinar no expresarse sobre la imposición de costas y honorarios.

El 28 de agosto de 2024, la parte apelada presentó su alegato. Con el beneficio de la comparecencia de todas las partes, procedemos a exponer la normativa jurídica aplicable a los asuntos ante nuestra consideración.

**II.**

**-A-**

La Ley de Control de Acceso[10] fue aprobada con el propósito de proveerle a nuestro País un mecanismo adicional para combatir la criminalidad y de promover la participación activa de la

---

[8] Véase Anejo 11 de la Apelación.
[9] Véase Anejo 1 de la Apelación, pág. 20.
[10] 23 LPRA sec. 64-1, actualmente derogada por el Código Municipal 2020, 21 LPRA sec. 7001, *et. seq.*

ciudadanía en la lucha contra el crimen[11]. Esta pieza legislativa persigue, además, mejorar la seguridad y tranquilidad de las comunidades, al procurar así una mejor convivencia e interacción comunitaria[12].

La citada Ley de Control de Acceso dispuso un procedimiento mediante el cual las personas que residan en urbanizaciones, comunidades o calles, cuyas vías públicas no sean utilizadas como acceso de entrada o salida a otras comunidades, puedan solicitar y obtener autorización para establecer un sistema de control de acceso a las calles que se encuentran dentro de su área residencial[13].

A través de esta ley se delegó en los municipios, con el asesoramiento de la Junta de Planificación de Puerto Rico, la facultad de reglamentar y conceder los permisos y autorizaciones para el control de acceso de vehículos de motor y el uso público de las calles[14]. Ello, conforme a los procedimientos, requisitos y criterios reseñados en la propia ley y en el Reglamento de Planificación Núm. 20 de 20 de enero de 1989, Reglamento de Control de Tránsito y Uso Público de Calles Locales. Dicho estatuto, dispone, entre otras cosas, los requisitos necesarios para solicitar y obtener los permisos para controlar el acceso[15]; las notificaciones requeridas para efectuar el trámite de cierre[16]; las consecuencias de violar o incumplir con los requisitos establecidos en la ley[17]; los requisitos para inscribir el control de acceso en el Registro de la Propiedad como un gravamen real sobre el inmueble[18]; el proceso

---

[11]Exposición de Motivos de la Ley de Control de Acceso, pág. 67.
[12] *Coop. Oriental v. Cons. Tit.* 195 DPR 330, 342 (2016); *Residentes Sagrado Corazón v. Arsuaga,* 160 DPR 289 (2003); *Asoc. Vec. Altamesa Este v. Mun. San Juan,* 140 DPR 24, 30 (1996); *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 DPR 181, 186 (1993).
[13] 23 LPRA sec. 64.
[14] Ley Núm. 156 de 10 de agosto de 1988.
[15] 23 LPRA sec. 64a.
[16] 23 LPRA sec. 64b.
[17] 23 LPRA sec. 64d.
[18] 23 LPRA sec. 64d-1.

para cancelar dicha inscripción[19], y las personas obligadas a contribuir económicamente en el mantenimiento del sistema de control de acceso[20].

En cuanto a sistemas de control de acceso las disposiciones transitorias incluidas en el Sección 5 de la Ley de Control de Acceso, disponen:

> Sección 5. — (23 LPRA § 64b-1) Cualquier urbanizador, desarrollador de terrenos o constructor de urbanización, lotificación o lotificación simple, antes de vender, de haber concedido una opción de compra o de cualquier otra forma haberse comprometido a vender una vivienda, solar, lote o terreno de los que se propone desarrollar o lotificar, podrá establecer en éste los controles de acceso, sujeto a que cumpla con las disposiciones de esta ley y de las ordenanzas y reglamentos que adopte el municipio que le sean aplicables y obtenga previamente la correspondiente autorización o permiso de control de acceso del municipio donde ubique la urbanización, lotificación o lotificación simple, según sea el caso. El municipio establecerá por reglamento, en consulta con la Junta de Planificación de Puerto Rico, el procedimiento para conceder autorizaciones o permisos de control de acceso bajo esta Sección. Los urbanizadores o desarrolladores no estarán sujetos a lo dispuesto en los incisos (a), (c) y (d) de la Sección 2.

Asimismo, la Ley de Control de Acceso faculta a las asociaciones de residentes para que, luego de organizadas y registradas en el Departamento de Estado como instituciones sin fines de lucro, se encarguen de la administración y el mantenimiento de los sistemas de control de acceso[21].

De otra parte, la Sec. 10(a)(3) de la Ley de Control de Acceso, *supra*, dispone lo siguiente:

> (a) El Consejo, Junta o Asociación de Residentes está facultada para imponer una cuota para cubrir los costos y gastos de instalación, operación y mantenimiento del sistema de control de acceso, incluyendo los salarios o jornales del personal contratado. Asimismo, está facultada para cobrar dicha cuota y reclamar la deuda a un propietario por este concepto por la vía judicial.
> La obligación de pago recaerá en los siguientes propietarios:
>
> 1. Los propietarios de fincas en las que se haya inscrito la autorización o permiso bajo el procedimiento establecido en la sec. 64d-1 de este título.
> 2. Los propietarios que autorizaron la solicitud para establecer el control de acceso, según fue implantado.

---

[19] 23 LPRA sec. 64d-2.
[20] 23 LPRA sec. 64d-3. *Residentes Sagrado Corazón v. Arsuaga, supra*; *Asoc. Ctrl. Acc. C. Maracaibo v. Cardona*, 144 DPR 1, 26 (1997); *Asoc. Res. Linda Gardens v. Mun. Guaynabo*, 138 DPR 925, 930 (1995).
[21] 23 LPRA secs. 64a(a) y 64d-3(a).

3. [...]

4. **<u>Cuando la solicitud fue hecha por el urbanizador, desarrollador o constructor, el pago de cuota será obligatorio para toda persona que advenga dueño del inmueble</u>**[22].

. . . . . . . .

La sec. 64d-3 (b) de la referida Ley de Control de Acceso, *supra*, indica que:

El propietario que esté en mora será requerido de pago mediante correo certificado con acuse de recibo y de no efectuar el pago en plazo de quince (15) días a partir de la notificación por correo certificado, **se le podrá exigir el pago por la vía judicial, en cuyo caso el tribunal impondrá al deudor moroso el pago de costas y honorarios de abogado**, cuya cantidad será establecida en el reglamento de la asociación de residentes. (Énfasis nuestro).

Entiéndase, que la imposición del pago de costas y honorarios de abogado por parte del foro sentenciador es directivo, no es opcional. El foro que emita su dictamen para resolver una controversia relativa a la deuda por concepto de cuotas de mantenimiento tiene a la vez que fijar las cuantías por costas y honorarios de abogado. La cantidad que se concederá en costas y honorarios de abogado deberá constar en el reglamento de la asociación de residentes que reclama la cantidad. Así lo establece la mencionada ley.

-B-

La sentencia declaratoria es un "mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita"[23].

---

[22] 23 LPRA sec. 64d-3.

[23] *Beltrán Cintrón v. Estado Libre Asociado*, 204 DPR 89, 109 (2020), citando a *Senado de PR v. ELA, 203 DPR 62, 71 (2019),* que a su vez cita a *Alcalde Guayama v. ELA,* 192 DPR 329, 333 (2015).

La Regla 59.1 de Procedimiento Civil[24], dispone que los tribunales de instancia tendrán autoridad para declarar derechos, estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio. Dicha regla, claramente establece que no se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria. El segundo inciso de la discutida regla establece quiénes pueden solicitar el mecanismo de sentencia declaratoria, la facultad de interpretación y el ejercicio de las facultades. Así pues, esta lee:

> (a) Toda persona interesada en una escritura, un testamento, un contrato escrito u otros documentos constitutivos de contrato, o cuyos derechos, estado u otras relaciones jurídicas fuesen afectados por **un estatuto, una ordenanza municipal, un contrato o una franquicia**, podrá solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dichos estatutos, ordenanzas, contrato o franquicia, y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven. Un contrato podrá ser interpretado antes o después de haber sido infringido.
>
> (b) Las personas albaceas, administradoras judiciales, fideicomitentes, fideicomisarias, fiduciarias, tutoras, acreedoras, legatarias, herederas o causahabientes que actúen en esas capacidades o en representación de otras personas interesadas, podrán pedir y obtener una declaración de derechos o de relaciones jurídicas en todos los casos en que se administren fideicomisos, fundaciones, bienes de personas difuntas, personas menores incapacitadas o insolventes:
> (1) para determinar sobre clases de personas acreedoras, legatarias, herederas, causahabientes u otros;
> (2) para ordenar a las personas albaceas, administradoras o fideicomisarias que ejecuten o se abstengan de ejecutar cualquier acto determinado en su capacidad fiduciaria, o
> (3) para determinar sobre cualquier cuestión que surja en la administración de los bienes o del fideicomiso, incluso las de interpretación de testamentos y otros documentos.
>
> (c) La enumeración hecha en los incisos (a) y (b) de esta regla, no limita ni restringe el ejercicio de las facultades generales conferidas en la Regla 59.1 dentro de cualquier procedimiento en que se solicite un remedio declaratorio, siempre que una sentencia o decreto haya de poner fin a la controversia o despejar una incertidumbre.

El objetivo de la discutida regla es proveer al ciudadano un mecanismo procesal de carácter remedial mediante el cual se dilucide ante los tribunales los méritos de cualquier reclamación

---

[24] 32 LPRA Ap. V, R. 59.1.

que en forma latente entraňe un peligro potencial en su contra[25]. Igualmente, ha sido resuelto que el mecanismo de sentencia declaratoria es el adecuado para adjudicar controversias de índole constitucional[26], y, conforme a la doctrina prevaleciente, debe utilizarse cuando permite finalizar situaciones de incertidumbre o inseguridad en cuanto a derechos[27].

**-C-**

Por medio de la hermenéutica legal nos adentramos al proceso de interpretar las leyes; es decir, auscultar, averiguar, precisar y determinar cuál ha sido la voluntad legislativa. Este método de interpretación se utiliza, no solamente en la interpretación de estatutos, sino también, en la de los contratos, testamentos, reglamentos administrativos y cualquier otro documento[28].

**-D-**

En nuestro ordenamiento jurídico, la concesión de costas en el litigio está gobernada por la Regla 44.1 de las de Procedimiento Civil[29]. En lo pertinente, ésta dispone que "le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión [...]"[30]. De acuerdo con la norma procesal, el criterio para que el tribunal decida cuáles partidas de las costas solicitadas concede, es que se trate de los "gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra"[31].

La Regla también establece el procedimiento que se debe seguir para conceder las costas. En particular, el inciso (b) dispone

---

[25] *Suárez v. C.E.E. I, supra,* citando a *Charana v. Pueblo,* 109 DPR 641, 653 (1980).
[26] *Suárez v. C.E.E. I, supra,* citando a *Charana v. Pueblo,* 109 DPR 641, 653 (1980), *Asoc. de Periodistas v. González,* 127 DPR 704 (1991).
[27] *Íd.*
[28] R. Elfren Bernier y J. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico,* 2da ed. rev., San Juan, Pubs. JTS, 1987, Vol. I, pág. 241. Véase, además, *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 717, 738 (2012).
[29] 32 LPRA Ap. V, R. 44.1.
[30] 32 LPRA Ap. V, R. 44.1.
[31] *Íd.*

que la parte reclamante tiene el término de diez (10) días, contados a partir de la notificación de la sentencia que le favorece, para presentar al tribunal, y notificar a la parte contraria, un memorando de costas[32]. El referido término de diez (10) días es de naturaleza jurisdiccional, tanto para presentar el memorando de costas como para notificar el mismo[33]. La naturaleza jurisdiccional del término para presentar y notificar un memorando de costas surge en virtud de la Regla 68.2 de Procedimiento Civil[34]. Por lo cual, este plazo es improrrogable y su cumplimiento tardío priva al tribunal de autoridad para considerar y aprobar las costas reclamadas[35].

Por último, la Regla 44.1 señala en el inciso (d), que en caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que corresponde a tal conducta. Aunque el concepto temeridad no está expresamente definido por la Regla 44.1 (d) de Procedimiento Civil, se trata de una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia[36].

El propósito de este mecanismo es penalizar al que con su conducta ha obligado a la parte adversa en un litigio a incurrir en gastos y con ello le ha causado innecesariamente molestias e inconvenientes[37]. La imposición del pago de honorarios de abogado, de conformidad con la Regla 44.1, *supra*, depende de que el tribunal haga una determinación de temeridad.

---

[32] Regla 44.1(b) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1.
[33] *Rosario Domínguez v. ELA*, 198 DPR 197 (2017); *Comisionado v. Presidenta*, 166 DPR 513, 518 (2005).
[34] 32 LPRA Ap. V., R. 68.2.
[35] *Rosario Domínguez v. ELA, supra.*
[36] *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713 (1987).
[37] *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 867 (2008); *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999).

Por último, "[l]a determinación de si un litigante ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador"[38]. El tribunal impondrá la cuantía que el juzgador entienda que corresponde a la conducta temeraria[39]. Los criterios a evaluar al determinar si una parte litigante incurrió en temeridad son: (1) el grado de temeridad desplegada durante el litigio; (2) la naturaleza del procedimiento judicial; (3) los esfuerzos y la actividad profesional ejercida en el litigio; (4) la habilidad y reputación de los abogados[40].

Cónsono con lo anterior, reconocemos que de ordinario el ejercicio de las facultades discrecionales por el foro de primera instancia merece nuestra deferencia. Como corolario de lo anterior, sólo intervendremos con el ejercicio de dicha discreción en aquellas situaciones en que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo[41].

### III.

Marimar aduce que el TPI incide en mantener la validez del Control de Acceso cuando esto no se realizó conforme al derecho vigente a la fecha del desarrollo de la urbanización. Reafirma que la Ordenanza Núm. 18 es clara y requiere que el desarrollador de la urbanización solicitara la autorización del municipio antes de iniciar el proyecto o vender las propiedades, por lo cual la inscripción del control de acceso es nula.

Por su parte, la Asociación sostiene que debido a que la parte apelante adquirió la buena pro de la subasta, al ser un adquirente

---

[38] *Raoca Plumbing v. Trans World*, 114 DPR 464, 468 (1983).
[39] *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013); citando a *Andamios de PR v. Newport Bonding*, 179 DPR 503, 519-520 (2010).
[40] *Asociación de Condóminos v. Trelles Reyes*, 120 DPR 574, 579 (1988).
[41] *Rivera Durán v. Banco Popular*, 152 DPR 140 (2000).

voluntario conforme con la Ley 119- 2016 está obligado a pagar las cuotas de mantenimiento.

Luego de haber examinado los hechos del caso y el derecho aplicable, entendemos que a la parte apelante no le asiste la razón. Veamos.

Marimar adquirió el bien inmueble en controversia mediante subasta por lo cual es un adquiriente voluntario[42] sujeto a responder por la entera satisfacción de las cuotas de mantenimiento. Por consiguiente, solo resta determinar si el control de acceso de la urbanización fue otorgado conforme a derecho.

Acorde con la normativa jurídica expuesta, la Ley de Control de Acceso, *supra,* reglamenta lo pertinente al establecimiento de barreras. La Ley de Control de Acceso, *supra* establece dos instancias para solicitar el permiso. La primera es improcedente al caso de marras porque es para la situación de calles o urbanizaciones ya construidas y, la segunda, aplicable a la controversia, es cuando la solicita un urbanizador antes de vender, de haber concedido una opción de compra o de cualquier otra forma haberse comprometido a vender una vivienda, solar, lote o terreno de los que se propone desarrollar o lotificar, podrá establecer en éste los controles de acceso[43].

Tras examinar minuciosamente la Ordenanza Núm. 18, concluimos de igual forma que el foro primario a saber: la Ordenanza Núm. 18 aplica en situaciones en las que una comunidad ya fue establecida y decide solicitar autorización para

---

[42] Las características de un adquirente voluntario son las siguientes: (1) puede ser un comprador, un donatario, un permutante, o aquél que se lleva la buena pro en una subasta pública, (2) adquiere el crédito hipotecario o el apartamiento con el ánimo de hacer un buen negocio, (3) tiene la "oportunidad y [los] medios de enterarse de la deuda por gastos comunes del condominio[, y (4) el] poder de decisión para asumirlos como gravamen del inmueble que adquiere." Véase Condominio First Federal v LSREF2, 202 DPR934944-945 (2019) citando a M.J. Godreau, El condominio: El régimen de propiedad horizontal en Puerto Rico, San Juan, Segunda Ed. Situm, 2019, pág. 311.
[43] 23 LPRA sec. 64b-1.

controlar el flujo de vehículos de motor por determinadas calles[44], por lo cual, no aplica cuando el desarrollador o urbanizador del proyecto solicita el control de acceso antes de vender los lotes, como el caso de marras.

Así pues, surge que el 27 de septiembre de 2005 el desarrollador, Brisas de Mar Chiquita Corp., antes de vender los predios, obtiene el endoso favorable del municipio[45], esto, conforme lo exige la Ley de Control del Acceso, *supra*, el Reglamento de Control de Tránsito y Uso de Público de Calles Locales[46].

Lo anterior puede corroborarse de un examen de la Escritura Núm. 14 del 8 de noviembre de 2005[47], titulada *Escritura Sometiendo a las Disposiciones de la Ley de Acceso Controlado La Urbanización Brisas de Mar Chiquita* y la Escritura Núm. 15 sobre *Constitución de Servidumbre en Equidad*. En general, al realizar una lectura integrada de las Escrituras Núm. 14 y 15, la carta del 27 de septiembre de 2005 de la vicealcaldesa del municipio, el asiento 156 del diario 292 del Registro de la Propiedad, sección de Manatí y la condición restrictiva fue inscrita el 13 de marzo de 2006 folio 98 del tomo 557 de Manatí y el folio 97 del tomo 581 de Manatí de la finca 17702, determinamos que el proceso de solicitar el control de acceso controlado es conforme al derecho vigente de esa época.

Por tal razón, colegimos que, la parte apelante no ha presentado prueba que rebata la inscripción de las escrituras relacionadas con el control de acceso e imposición de la cuota de mantenimiento. Por lo tanto, colegimos que, Marimar tiene la responsabilidad de cumplir con los pagos de las cuotas de mantenimiento. Cónsono con lo anterior, el primer error no fue cometido.

---

[44] Véase Anejo 1 de la Apelación.
[45] Véase Anejo 8 de la Apelación, pág. 156.
[46] Reglamento 20, de 20 de enero de 1989.
[47] Véase Anejo 8 de la Apelación, pág. 149.

En lo pertinente al segundo error que hilvana la parte apelante, se circunscribe en la aplicación de la Regla 44.1(d) de Procedimiento Civil, *supra*, la cual rige la imposición de los honorarios de abogado. La regla establece lo siguiente:

> En caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable, el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta.
> Un tribunal deberá imponer una suma por los honorarios de abogado a una parte que, por sí o mediante su representación legal, haya actuado con temeridad o frivolidad. La conducta que amerita la imposición de los honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar, o gestiones evitables[48].

La determinación de si una parte ha actuado o no con temeridad descansa en la discreción del tribunal, por lo que el Tribunal Supremo sólo intervendrá cuando surja de tal actuación un claro abuso de discreción[49]. La jurisprudencia ha señalado los siguientes actos como temerarios: "cuando el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente; cuando se defiende injustificadamente de la acción que se presenta en su contra; cuando no admite francamente su responsabilidad limitada o parcial, a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía es exagerada; cuando se arriesga a litigar un caso del que *prima facie* se desprende su negligencia; o cuando niega un hecho que le consta ser cierto"[50].

Con la mera lectura de la regla que precede, concluimos que el segundo error no fue cometido. Primeramente, Marimar fue la parte perdidosa y, por otro lado, no apreciamos en la conducta de la parte apelada terquedad, obstinación, o contumacia que justifique la penalidad que supone la imposición de honorarios de abogado.

---

[48] *Ramírez v. Club Cala de Palmas*, 123 DPR 339 (1989).
[49] Andamios de Puerto Rico v JPH Contractors 179 DPR 503, (2010).
[50] *Fernández v. San Juan Cement Co., Inc., supra,* págs. 718-719.

En consecuencia, colegimos que el TPI denegó correctamente la solicitud de honorarios por temeridad y costas.

**IV.**

Por los fundamentos que anteceden, ***confirmamos*** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones