Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MUNICIPIO DE HORMIGUEROS<br><br>Apelante<br><br>Vs.<br><br>AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN<br><br>Apelado | KLAN202500314 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Sobre: Mandamus<br><br>Caso Núm.: MZ2023CV00330 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de octubre de 2025.

Comparece ante nos el Municipio de Hormigueros (en adelante, Municipio o apelante) para que revoquemos la *Sentencia* emitida el 25 de febrero de 2025 por el Tribunal de Primera Instancia, Sala de Mayagüez (en adelante, TPI).[1] Allí, se desestimó la reclamación del Municipio en referencia a unas multas impuestas al amparo del Código Municipal, *infra.*

Considerados los escritos de las partes, procedemos a **confirmar** la *Sentencia* apelada. Veamos.

-I-

El **28 de febrero de 2023**, el Municipio presentó una *Demanda* sobre *Mandamus* y cobro de dinero contra la Autoridad de Carreteras y Transportación (en adelante, ACT o apelada).[2] En síntesis, el Municipio estableció un Programa para el Manejo de

---

[1] Notificada el 26 de febrero de 2025.
[2] Apéndice de la *Apelación*, Anejo I, a las págs. 1-9.

Número Identificador
SEN2025_____

Estorbos Públicos en virtud del Código Municipal de Puerto Rico, *infra,* y la Ordenanza Municipal Núm. 12 Serie 2020-2021. De acuerdo con el Municipio, la primera etapa del proceso era identificar las propiedades en condición de estorbo público. Durante dicho proceso, el Municipio identificó varias propiedades y entre estas, dieciséis pertenecían a la ACT. A raíz de ello, procedió a notificar mediante carta certificada a la apelada sobre las etapas del proceso de declaración de estorbo público.

Según alegó el Municipio, la ACT no contestó los requerimientos hechos ni solicitó una vista con un oficial examinador, en virtud de las disposiciones del Código Municipal de Puerto Rico, *infra.* Así las cosas, el Municipio les impuso multas administrativas a algunas de las propiedades pertenecientes a la ACT. Estas, de acuerdo con el Municipio, no se pagaron, por lo cual, alegó que la ACT le adeudaba la suma de $69,500 por concepto de multas administrativas. De manera que, le solicitó al TPI que ordenara el pago de las multas y la demolición de las dieciséis (16) propiedades pertenecientes a la ACT.

Tras varios trámites procesales que resultan inmeritorios pormenorizar, el **24 de noviembre de 2023** la ACT compareció mediante *Contestación a la demanda.*[3] En síntesis, negó las alegaciones en su contra. Aclaró que al ser una corporación pública, con facultad de adquirir y poseer propiedades inmuebles, la Ley Núm. 74 del 23 de junio de 1965, según emendada, le eximía del pago de aranceles. Además, alegó que el Municipio pretendía enriquecerse injustamente al imponerle las multas administrativas.

El **8 de enero de 2025**, el Municipio presentó una *Moción para que el Tribunal emita una Sentencia Declaratoria.*[4] En resumen,

---

[3] Entrada Núm. 33 del *Sistema Unificado para el Manejo y Administración de Casos* (SUMAC).
[4] Apéndice de la *Apelación,* Anejo XI, a las págs. 121-127.

el Municipio le solicitó al TPI que declarara la autoridad del apelante para imponerle multas a la ACT.

El **28 de enero de 2025**, la ACT presentó su *Réplica* a la *Moción* del Municipio.[5] En esencia, arguyó que los recursos legales presentados por el Municipio —*mandamus* y sentencia declaratoria— no cumplían con los requisitos mínimos exigidos para concederlos. Además, reiteró que el Municipio carece de facultad en ley para imponerle multas. Asimismo, negó tener obligación en ley que le exigiera el pago de las multas impuestas por el Municipio.

El **3 de febrero de 2025**, el Municipio presentó una *Dúplica.*[6] En esta, enfatizó que el caso de epígrafe presentaba una controversia real y concreta, "perfecta" para resolverse mediante sentencia declaratoria.

El **26 de febrero de 2025**, el TPI emitió *Sentencia* en la cual declaró **Ha Lugar** la *Réplica* de la ACT, y en consecuencia, dejó sin efecto las multas impuestas por el Municipio.[7] Razonó que la Ley Núm. 74 del 23 de junio de 1965, según emendada, explícitamente exime a la ACT del pago de contribuciones o impuestos sobre las propiedades adquiridas por la apelada o bajo su potestad. De igual forma, el TPI no identificó en el Código Municipal de Puerto Rico, *infra*, disposición alguna en la que se le concediera a los municipios autorización para imponer multas al Estado o sus instrumentalidades públicas. Así, concluyó que la declaración de estorbo público por parte del Municipio era una mera expresión simbólica que no acarreaba efecto legal alguno.

Insatisfecho, el Municipio presentó en este foro intermedio el recurso de apelación y realizó el siguiente señalamiento de error:

> *Erró el TPI al resolver que el Municipio no tiene autoridad legal para declarar como estorbo público una propiedad de la ACT, y por lo tanto, tampoco puede imponerle multas.*

---

[5] Apéndice de la *Apelación*, Anejo XII, a las págs. 140-160.
[6] Apéndice de la *Apelación*, Anejo XIII, a las págs. 161-165.
[7] Apéndice de la *Apelación*, Anejo XIV, a las págs. 166-172.

Por su parte, ACT presentó su escrito en oposición. Por lo que el recurso quedó perfeccionado para la consideración del Panel Especial.

**-II-**

**-A-**

La sentencia declaratoria es un mecanismo *"remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales",* siempre que se demuestre la existencia de un peligro real contra la parte que solicita la sentencia declaratoria.[8] De igual modo, se ha reconocido que la sentencia declaratoria es un mecanismo idóneo para adjudicar controversias de índole constitucional.[9]

En específico, la sentencia declaratoria se rige por la Regla 59.1 de Procedimiento Civil,[10] que le confiere facultad al tribunal para que pueda declarar derechos, estados y otras relaciones jurídicas independientemente de que se solicite otro remedio. La citada regla añade que la sentencia declaratoria puede ser afirmativa o negativa, y tiene el mismo efecto y la fuerza de las sentencias o resoluciones finales que dictan los tribunales. Por lo cual, el Tribunal Supremo de Puerto Rico ha expresado que una solicitud de sentencia declaratoria tiene como resultado una decisión judicial sobre cualquier discrepancia en la interpretación de la ley.[11]

Por su parte, el inciso (a) de la Regla 59.2 de Procedimiento Civil,[12] dispone que cualquier persona que tenga interés en una escritura, un testamento, un contrato o cuyos derechos, estado u otras relaciones jurídicas se vean afectados por un precepto legal,

---

[8] *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 383–384 (2002); *Charana v. Pueblo*, 109 DPR 641, 653 (1993).
[9] *Asociación de Periodistas v. González*, 127 DPR 704, 723–724 (1991).
[10] 32 LPRA Ap. V, R. 59.1.
[11] *Mun. Fajardo v. Srio. Justicia et al.*, 187 DPR 245, 254 (2012).
[12] 32 LPRA Ap. V, R. 59.2.

una ordenanza municipal, un contrato o una franquicia, podrá solicitar una sentencia declaratoria.

El profesor Hernández Colón comenta que la sentencia declaratoria se dicta en un proceso en el que se alegan hechos que indican que existe una controversia entre las partes cuyos intereses legales son opuestos, sin que sea necesaria la existencia de una lesión previa de estos con el propósito de resolver la incertidumbre legal y promover la paz social.[13]

Por lo tanto, una demanda de sentencia declaratoria tiene que exponer hechos que demuestren la existencia de una controversia real y actual entre partes con intereses legales opuestos.[14] Así, de las alegaciones de la demanda debe surgir *"que el demandado ha planteado, afirmado o aseverado positivamente, y en forma extrajudicial, una reclamación o derecho opuesto a la aserción del demandante, quedando establecido un conflicto extrajudicial entre los intereses de ambas partes".*[15] Asimismo, se debe demostrar que existe una probabilidad sustancial de que el demandado lleve a cabo una invasión de los derechos del demandante.[16] Por consiguiente, la parte que solicita una sentencia declaratoria tiene que demostrar que la controversia no es remota, abstracta, teórica, académica ni especulativa, sino que tiene suficiente actualidad.[17] Así, el demandante tiene que demostrar que los intereses de la justicia serán bien servidos y que la sentencia que el tribunal dicte en su día será efectiva y adecuada. No obstante, precisa aclarar que la concesión de una sentencia declaratoria descansa en el ejercicio de una sana discreción judicial.[18]

---

[13] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta Ed., San Juan, Lexis, 2010, Sec. 6001, pág. 560.
[14] Moscoso v. Rivera, 76 DPR 481, 492–493 (1954).
[15] *Íd.*
[16] *Íd.*
[17] *Íd*, págs. 492–493.
[18] *Íd.*

Finalmente, es importante destacar que la parte que solicita una sentencia declaratoria está sujeta al cumplimiento de los criterios de legitimación activa.[19] Es decir, tiene que demostrar que **(1)** ha sufrido un daño claro y palpable; **(2)** el daño es real, inmediato y preciso, y no abstracto e hipotético; **(3)** existe una relación causal razonable entre la acción que se ejercita y el daño alegado, y **(4)** la causa de acción debe surgir al amparo de la Constitución o de alguna ley.[20]

**-B-**

El Código Municipal de Puerto Rico, Ley Núm. 107-2020, según enmendada, (en adelante, Código Municipal) provee el marco legal que regula los gobiernos municipales, incluyendo su organización, administración y funcionamiento.[21] Por lo cual, se declara como política pública del Gobierno de Puerto Rico otorgar a los municipios el máximo posible de autonomía y proveerles las herramientas financieras y fiscales; así como, los poderes inherentes a su subsistencia y las facultades necesarias para asumir una función central y fundamental en su desarrollo urbano, social y económico.[22]

Asimismo, se reconoce la autonomía municipal en el ejercicio de sus poderes jurídicos, económicos y administrativos sobre asuntos relativos al bienestar general de sus habitantes. **La autonomía municipal se ejercerá sin menoscabar los poderes y facultades de la Asamblea Legislativa**.[23]

En virtud del Artículo 1.009 del Código Municipal, los municipios tienen la facultad delegada para aprobar y poner en vigor

---

[19] *Mun. Fajardo v. Srio. Justicia et al., supra*, págs. 254–255; *Romero Barceló v. E.L.A.*, 169 DPR 460 (2006).
[20] *P.I.P. v. E.L.A. et al.*, 186 DPR 1 (2012).
[21] 21 LPRA sec. 7002.
[22] 21 LPRA sec. 7003.
[23] 21 LPRA sec. 7012.

ordenanzas con sanciones tanto penales como administrativas. El referido precepto dispone que:

> [...] el municipio podrá imponer y cobrar multas administrativas de hasta un máximo de cinco mil (5,000) dólares por infracciones a sus ordenanzas, resoluciones y reglamentos de aplicación general, conforme se establezca por ley u ordenanza.[24]

En lo pertinente a la controversia de epígrafe, el Código Municipal le delega a los municipios la declaración de estorbos públicos. El Artículo 8.001(98) del Código Municipal define *estorbo público* como:

> Cualquier estructura abandonada o solar abandonado, yermo o baldío que es inadecuada para ser habitada o utilizada por seres humanos, por estar en condiciones de ruina, falta de reparación, defectos de construcción, o que es perjudicial a la salud o seguridad del público. Dichas condiciones pueden incluir, pero sin limitarse a, las siguientes: defectos en la estructura que aumentan los riesgos de incendios o accidentes; falta de adecuada ventilación o facilidades sanitarias; falta de energía eléctrica o agua potable; y falta de limpieza.[25]

Por su parte, el Artículo 4.008 establece el procedimiento para la identificación de los estorbos públicos. El Código Municipal dispone que concluidos los estudios el municipio procederá a identificar como posible estorbo público toda estructura o solar que sea declarado como tal y tendrá que notificar a los propietarios, poseedores y personas con interés.[26]

Debemos resaltar que el Artículo 8.001 del Código Municipal define a persona, propietarios, agencia pública y gobierno estatal por separado. A saber:

> **Agencia Pública:** Significa cualquier agencia, departamento, programa, negociado, oficina, junta, comisión, compañía, administración, autoridad, instituto, cuerpo, servicio, dependencia, corporación pública y subsidiaria de esta e instrumentalidad del Gobierno de Puerto Rico.
>
> **Gobierno Estatal:** El Gobierno de Puerto Rico y sus agencias públicas, incluyendo las corporaciones públicas, así como las dependencias y oficinas adscritas a estas.

---

[24] 21 LPRA sec. 7014.
[25] 21 LPRA sec. 8351.
[26] 21 LPRA sec. 7632.

**Persona:** Toda persona, natural o jurídica, pública o privada, y cualquier agrupación de ellas

**Propietario:** Cualquier persona, natural o jurídica, que sea dueño de un interés legal o un uso productivo sobre propiedad inmueble. [...][27]

La declaración de estorbo público está gobernada por el Artículo 4.010 del Código Municipal. El precitado artículo dispone que una vez el **propietario**, poseedor o **persona** con interés sea notificado conforme al Artículo 4.008, *supra*, y este no comparece para oponerse, el municipio puede declarar la propiedad como estorbo público.[28]

El municipio puede, además, expropiar forzosamente la propiedad. Sobre la expropiación forzosa, el Artículo 2.018 dispone que los municipio no tienen la facultad de promover un proceso de expropiación forzosa contra una propiedad que le pertenezca al Gobierno de Puerto Rico o alguna de sus instrumentalidades, a no ser que medie autorización expresa por medio de una Resolución Conjuntade la Asamblea Legislativa.[29]

**-C-**

Ley de la Autoridad de Carreteras y Transportación de Puerto Rico, Ley Núm. 74 de 23 de junio de 1965, según enmendada (en adelante, Ley de la Autoridad) se creó para establecer un cuerpo corporativo y político en forma de corporación pública e instrumentalidad gubernamental del Estado Libre Asociado de Puerto Rico.

En lo pertinente a este caso, el Artículo 17 inciso (a) dispone que la ACT se creó para el mejoramiento del bienestar general, el aumento del comercio y la prosperidad.[30] Y añade que al ser todos estos propósitos públicos para el beneficio del pueblo de Puerto Rico,

---

[27] 21 LPRA sec. 8351.
[28] 21 LPRA sec. 7634.
[29] 21 LPRA sec. 7183.
[30] 9 LPRA sec. 2017.

la ACT "no será requerida para pagar ningunas contribuciones o impuestos sobre ninguna de las propiedades adquiridas por ella bajo su potestad, dominio, posesión o inspección".[31]

**-D-**

En nuestra misión de hacer justicia la discreción es el más poderoso instrumento reservado a los jueces.[32] No obstante, en el ámbito del desempeño judicial, la discreción no significa poder para actuar en una forma u otra, haciendo abstracción del resto del derecho.[33] Más bien, se ha entendido que es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera.[34]

En nuestro rol como foro apelativo, es norma reiterada que no habremos de intervenir con el ejercicio de la discreción del tribunal de instancia, salvo en caso de un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.[35]

En ese sentido, la apelación o revisión se da contra la sentencia apelada; es decir, contra el resultado y no contra sus fundamentos.[36]

Lo antes expresado, está predicado en la premisa de que el foro apelativo no puede pretender administrar ni manejar el trámite regular de los casos ante el foro de instancia, pues no hay duda de que ese es el foro que mejor conoce las interioridades del caso y quien está en mejor posición para tomar las medidas que permitan el adecuado curso del caso hacia su final disposición.

---

[31] *Íd.*

[32] *Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981).

[33] *Pueblo v. Sánchez González,* 90 DPR 197, 200 (1964).

[34] *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

[35] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[36] *Asoc. de Pescadores Punta Figueras, Inc. v. Marina Puerto del Rey* 155 DPR 906, 920 (2001).

**-III-**

A la luz de la normativa expuesta, procedemos a evaluar el recurso presentado.

En su único señalamiento de error el Municipio nos plantea que el TPI incidió al desestimar con perjuicio la causa de acción del apelante. Alega que erró al concluir que el apelante no tenia autoridad legal para declarar como estorbo público una propiedad de la ACT y que, por lo tanto, también carecía de autoridad legal para imponerle multas administrativas. No tiene razón.

En el presente caso, no hay duda de que los municipios están facultados a identificar y declarar como estorbo publico aquellas propiedades que estén abandonadas, inadecuadas para ser habitadas o utilizadas por seres humanos, por estar en condiciones de ruina, falta de reparación, defectos de construcción, o que sean perjudiciales a la salud o seguridad del público. De igual forma, los municipios también gozan de autoridad legal para multar a aquellos propietarios o personas con interés sobre el bien inmueble que no cumplan con las ordenes del municipio.

Ahora bien, el Municipio erradamente asegura que el Código Municipal, *supra,* lo faculta para imponerle una multa administrativa a la ACT, una instrumentalidad pública. Sustenta su reclamo arguyendo que el Código Municipal no excluye categóricamente al Estado ni a sus instrumentalidades de los procesos de declaración de estorbo público. No obstante, como bien señalan la ACT y el TPI, el Código Municipal hace una distinción entre propietarios, persona, gobierno estatal y agencia pública. Son los propietarios y las personas interesadas quienes están sujetos a los procesos de declaración de estorbo público por parte de los municipios. En ningún momento se menciona al Estado ni sus agencias. Además, del propio Código Municipal surge una prohibición para la expropiación forzosa de las propiedades

pertenecientes al Estado o sus instrumentalidades. De otro lado, la Ley de la Autoridad, *supra*, exime a la ACT del pago de contribuciones o impuestos sobre ninguna de las propiedades adquiridas por ella.

En conclusión, la sentencia declaratoria no encuentra anclaje legal alguno que declarare la autoridad del Municipio para imponerle y reclamarle multas a la ACT.

Así pues, no encontramos razón alguna que nos lleve a ejercer nuestra función revisora en este caso, toda vez que el proceder del TPI no es contrario a derecho, ni evidencia abuso de discreción, error, prejuicio o parcialidad de su parte. Por lo tanto, confirmamos la *Sentencia* apelada.

**-IV-**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones